JAMES FROST, Respondent, *v.* AMOS K. WARREN, as Sheriff of Chautauqua county, Appellant.

A mortgage is not fraudulent in law from the mere fact of its expressing a greater sum secured than the real amount of the debt which the mortgagor owes to the mortgagee.

The fact that the mortgagor continues to sell the mortgaged property (goods in a store), with the knowledge of the mortgagee, in the absence of proof that this was pursuant to an agreement between the parties, does not render the mortgage fraudulent in law, as against other creditors.

The question of fraud, in both respects, is properly submitted to the jury.

(Submitted January, 1870; decided March 26, 1870.)

APPEAL from an order of the General Term of the Supreme Court in the eight district, affirming an order of the Special Term denying a new trial.

Michael Greiner gave a chattel mortgage to the plaintiff, who was his father-in-law, to secure, as therein expressed, an indebtedness of $1,825.57, which mortgage was upon all the·

goods in a store, consisting of " a general grocery stock." It contained a provision that, in case the mortgagee should at any time deem himself unsafe, it should be lawful for him to take possession of and sell the property ".for the payment of the said debt," and was duly filed in the proper office. About one week after this mortgage was given, the plaintiff took possession of the goods, and the same day, or within two or three days thereafter, the defendant, as sheriff, levied upon them by virtue of an attachment duly issued in an action against Greiner, which action was prosecuted to judgment, execution issued thereon, and the property in question was sold by the defendant thereon. The plaintiff brings this action for a conversion, founded upon the seizure and sale above mentioned.

It appeared that when Greiner commenced business, about two years previously, the plaintiff made an arrangement with a firm in Buffalo, by which they were to furnish goods to Greiner, and the plaintiff gave his bond and mortgage upon real estate as a continuing security to the amount of $1,000, against any loss they might sustain by so furnishing goods. It was also understood that these goods were to be forwarded in the name of the plaintiff.

Greiner and his wife boarded with the plaintiff; and plaintiff's son was a clerk in the store. The plaintiff himself made some purchases at the store, one small item being charged to him but one or two days before he took possession.

There was some evidence of an attempt on the part of Greiner to secrete some of the goods, but not with the knowledge or consent of the plaintiff.

It was proved that, before the mortgage to the plaintiff was given, he had told Greiner that he must have a mortgage or he would close the store.

During the few days intervening between the date of the mortgage and the time when the plaintiff took possession, Greiner continued to sell the goods at retail, his clerk being a son of the plaintiff and both of them members of the plaintiff's family, as above stated.

On the trial, the evidence being closed, the defendant

requested the court to direct a verdict for the defendant, which the court refused to do and the defendant excepted.

The defendant also requested the court to charge the jury "that the insertion in the mortgage of an amount greater than the debt, with the agreement to pay such fictitious debt, rendered the mortgage fraudulent and void as against creditors."

The court refused to so charge, and the defendant excepted.

The defendant also requested the court to charge the jury that, if they shall find that the plaintiff allowed the mortgagor to sell at retail on his own account, the mortgage was void as against creditors. This request was also refused and the defendant excepted.

The jury were instructed, as to both points, that these facts were only badges of fraud, and it was left for them to decide whether the mortgage was received by the plaintiff with intent to defraud creditors.

The jury rendered a verdict in favor of the plaintiff, for the value of the property; which was a less amount than the liability of the plaintiff upon his own mortgage to the firm in Buffalo.

The defendant moved for a new trial, which was denied. He appealed to the General Term, where the order denying a new trial was affirmed. Judgment was then entered upon the verdict, and the defendant appealed to this court.

*John N. Hill*, for the appellant, cited *Conkling* v. *Shelley* (28 N. Y., 360); *Gardiner* v. *McEwen* (19 N. Y., 123); *Russell* v. *Winne* (37 N. Y., 591); *Mitnacht* v. *Kelley* (2 Trans. App., 342); *Edgell* v. *Hart* (5 Seld., 213); *Ford* v. *Williams* (24 N. Y., 364); *Story* v. *Brennan* (15 N. Y., 527); *The People* v. *Cooke* (8 N. Y., 73); *Woodburn* v. *Chamberlain* (17 Barb., 446); *Griffin* v. *Marquardt* (17 N. Y., 28); *Bailey* v. *Burton* (8 Wend., 339); *Webb* v. *Daggett* (2 Barb., 9); *Am. Ex. Bk.* v. *Webb* (36 Barb., 291); *Cavanaugh* v. *Beckwith* (41 Barb., 192); *Babcock* v. *Eckler* (24 N. Y., 632); *Williston* v. *James* (6 Duer., 504); *Griswold* v. *Sheldon* (4 Comst., 585, 593); *Wood* v. *Lowry* (17 Wend., 492)

*Charles D. Murray*, for the respondent, cited *Smith* v. *Acker* (23 Wend., 652); *Edgell* v. *Hart* (9 N. Y., 213); *Miller* v. *Lockwood* (32 N. Y., 293); *Gardiner* v. *McEwen* (19 N. Y., 123); *Conkling* v. *Shelly* (28 N. Y., 360); *Johnson* v. *Carnley* (10 N. Y., 570); *Frost* v. *Moot* (34 N. Y., 253); *Galon* v. *Brown* (22 N. Y., 39); *Hall* v. *Sampson* (35 N. Y., 277); *Brown* v. *Platt* (8 Bosw., 384).

FOSTER, J. There are only two questions in the case, arising on the charge of the judge, and his refusal to direct a verdict, although the counsel for the defendant raises the point that the judgment should be reversed, because the court charged: "If the jury should find that Michael intended a fraud by giving the mortgage, still the mortgage was a valid instrument, unless the plaintiff was himself a party to the fraudulent intent." In reference to this, it need only be said, that there is no exception to it; and, of course, the question is not properly before us, and judging from the opinion delivered in the court below, it was not presented there, but appears now for the first time.

The real questions are, whether the amount which was stated in the chattel mortgage, and which was greater than the actual liability of the plaintiff for the mortgagor, and for the security of which it was given, rendered it void *per se*. And so, also, whether the proof given on the trial showed that the mortgagee had given the mortgagor such permission to dispose of the mortgaged property, as rendered the mortgage void in law. For if so, in either respect, the charge was not only erroneous, but the court erred in not ordering a verdict for the defendant.

In regard to the amount stated in the mortgage, the language of it does not come fully up, in stating it as a security for future liabilities, to that in the case of *Miller* v. *Lockwood*, and yet it referred to the direct and collateral security which the mortgagee had assumed, and comes within the principle of that case, and, at most, was a badge of fraud, to be passed upon by the jury.

As to the proof given upon the subject of the sales made by the mortgagor after the mortgage was executed, there was no such direct proof as rendered the question palpably plain, but it was to be decided upon all the facts and circumstances proved; and the inferences to be drawn from them were peculiarly for the jury. And in regard to that, I think the charge was as favorable to the defendant as the case called for.

The case shows that the goods in question were mainly obtained upon the credit of the plaintiff, and were manifestly less in amount than the direct responsibility which he had incurred. And the jury having passed upon all the questions of fact, and found no fraudulent intent, the judgment should be affirmed.

GROVER, J. (dissenting.) The exception taken to the refusal of the judge to direct a verdict for the defendant, can be sustained only upon the ground that the mortgage under which the plaintiff made title was, by the proof given, shown to be fraudulent as against the creditors of the mortgagor, in whose right the defendant justified the taking and conversion of the property ; and that the proof in this respect was so conclusive that it was improper to submit any question arising thereon to the jury. In considering this question, it is necessary first to determine whether an agreement made by parol, at the time of giving a mortgage upon chattels, by the parties thereto, that the mortgagor might at any time thereafter sell and dispose of the chattels mortgaged, and appropriate the proceeds to his own use, the debt remaining unpaid, renders such mortgage fraudulent as against the creditors of the mortgagor; and, if so, second, whether the evidence proved that such agreement was made, or was so conflicting upon that point as to make the submission of that question to the jury proper. In *Edgell* v. *Hart* (5 Seld., 213), it was held by this court that an agreement, contained in the mortgage, that the mortgagor should retain possession of the property, and have the right of selling and disposing of the same on his own account, rendered the mortgage fraudulent as against the

Dissenting opinion, per Grover, J.

creditors of the mortgagor, and that, in such a case, it was the duty of the judge to dispose of the question as one of law, and that its submission to the jury was error. This was upon the principle that the agreement conclusively established that the mortgage was not taken in good faith for the exclusive purpose of securing the debt, but that other purposes were involved therewith. Upon principle this is clearly so. A mortgage given upon chattels with the right reserved by the mortgagor to retain possession and convert them at his pleasure to his own use, if any security to the mortgagee, could only be one of a very shadowy character; one that no creditor, designing only to secure his debt, would ever take, as it would be in the power of the mortgagor at any time to defeat it. In *Gardner* v. *McEwen* (19 N. Y., 123), *Edgell* v. *Hart* is cited with approval, and the doctrine asserted that such an agreement, made at the time, though not contained in the mortgage or reduced to writing, would have the like effect. The point cannot be considered as determined in that case, as it was disposed of upon the ground that the evidence, as it appeared in the case, did not conclusively show that such an agreement was made. In *Russell* v. *Winne* (37 N. Y., 591), the point was not directly involved; but the discussion of the points involved in the case shows pretty clearly that such was the opinion of the court. Indeed, no distinction in principle exists between a case where such an agreement is contained in the mortgage or other writing, and one where it is made by parol at the same time. The latter, equally with the former, shows that it was not the *bona fide* intention of the parties, in giving and receiving the mortgage, to secure the debt. It is unnecessary further to examine the question, as it is thoroughly discussed in the cases above cited; and the authorities bearing upon it, cited and commented upon in *Conkling* v. *Shelley* (28 N. Y., 360), contain nothing against this conclusion. There the mortgagee made the mortgagor his agent to sell the property for him, and it was held that the proceeds of all sales made must be applied as payment upon the mortgage debt, although not accounted

for and paid over by the mortgagor to the mortgagee. The same remarks are applicable to *Miller* v. *Lockwood* (32 N. Y., 293). It remains to inquire whether the evidence established the making of such an agreement. It may be remarked that this agreement, like any other parol agreement, may be proved by direct evidence, or by proof of facts and circumstances clearly showing it. The mortgagor was the son-in-law of the plaintiff, and had, together with his wife and clerk, boarded in the family of the plaintiff prior to the giving of the mortgage, and continued so to board at the time and subsequently thereto. He was engaged in the business of selling groceries and some other goods at retail. This was known to the plaintiff, who had become responsible for him for goods purchased for about a thousand dollars. The plaintiff, according to his own testimony, told the mortgagor that he must have a mortgage or he would close the store. Thereupon the mortgage was given, covering all the goods and fixtures in the store of every description. Now, what did the plaintiff mean by saying to his son-in-law, engaged in selling groceries and other goods at retail, at a store occupied by him, that he would close the store unless he gave him a mortgage? I think that he designed to have him understand that, if he did give him a mortgage, he might go on and continue to sell and conduct his business as before, and that the mortgagor did so understand it. That there can be no doubt of this, and that a verdict finding the contrary, there being no conflicting evidence, ought not to stand. So far from there being any conflicting evidence, it was further proved that, with the knowledge of the plaintiff, the mortgagor did continue the business thereafter, and make sales of the property as before, the plaintiff himself making some purchases at the store and having them charged in his account. The mortgagor, his wife and clerk continued to board with the plaintiff. Indeed, the plaintiff's son was clerk in the store and boarded with his father. Under these facts, which were undisputed, a verdict negativing an agreement by the mortgagee that the mortgagor might continue to sell the property on his own

account would be preposterous. Had the question arisen between the plaintiff and a purchaser of goods from the mortgagor, I can hardly conceive that there would have been any hesitation in directing a verdict in favor of the purchaser. The question between the plaintiff and defendant is precisely the same; that is, did the plaintiff, when he took the mortgage, agree with the mortgagor that he might go on with the business, making sales of the property, as before? I think the judge erred in refusing to direct a verdict for the defendant, as requested, and that the exception to such refusal was well taken. Nearly, but not precisely, the same question arises upon the exception taken to the refusal of the judge to charge the jury as requested. That request was, that if they should find that the plaintiff allowed the mortgagor to sell at retail on his own account, the mortgage is void as against creditors. This request, construed in the light of the evidence given in the case, might be understood as including the idea that he was so allowed to sell in pursuance of an agreement to that effect, made at the time of the giving of the mortgage. So understood, the exception was well taken. As an abstract proposition, its refusal was not erroneous. It may be true, in a certain sense, that a mortgagee allows a mortgagor to sell the property, without any agreement to that effect, and without assenting in any way to such sales, by merely abstaining from interfering to prevent them. This, while cogent evidence tending to show the mortgage fraudulent, is not conclusive, and may be explained consistently with good faith in the mortgagee. The latter remark is applicable to the exception taken to the refusal of the judge to charge that the mortgage was fraudulent as to creditors, by reason of the excess of the sum secured thereby over the liability incurred by and the indebtedness to the plaintiff. I have limited what I have said to the case of an agreement made cotemporary with the giving of the mortgage, because I regard this to be such a case. When a case arises where it appears · that such an agreement was made subsequently thereto, but not at the time, it will be the proper time to

determine whether there is any real difference in principle. The same remark is applicable to a case where the agreement was that the mortgagor might sell some specific portion of the property. The judgment should be reversed and a new trial ordered, costs to abide the event.

For affirmance, Foster, Smith, Lott, Ingalls and Sutherland, JJ., and Earl, Ch. J.

For reversal, Grover and Hunt, JJ.

Judgment affirmed.