Martin, J.
— A thorough examination of the evidence contained in the appeal book had led us to the conclusion that the findings of the trial judge were fully sustained, and that the court properly directed a judgment dismissing the plaintiffs’ complaint with costs. The opinion of the learned trial judge so clearly presents the questions involved and the principles of law which govern them' as to render any further discussion unnecessary. We have also ex *717 amined all the rulings of the trial court to which our attention has been called by the appellants, but have found none that would justify a reversal of the jndgment, or that require special discussion. ' It follows that the judgment should be affirmed.
Judgment affirmed, with costs.
All concur.
The opinion of Mr. Justice Yakít at special term is as follows:
The first and second chattel mortgages are conclusively presumed to be fraudulent on account of the implied agreement between the parties thereto that the mortgagor might sell the mortgaged property and use the proceeds in his general business. Southard v. Benner, 72 N Y. 424 ; Hangen v. Hachemeister, 114 N. Y. 566; 24 St. Rep. 526. The debt, however, which these mortgages were given to secure, was not fraudulent, but was supported by a valuable and adequate consideration. The fact that the mortgages were void, so' long as the debt was valid, did not prevent the debtor, who still honestly owed the debt, from securing his creditor by giving him a third mortgage, free from the taint that had infected its predecessors. This was accordingly attempted to be done, at least in form, and the controlling question in this case is whether it was done in fact as well as form. The evidence of the debt was a promissory note, which was renewed at intervals, and the last renewal was on the 27th of May, 1894, while the last mortgage was given on the 27th of July following, but at too late an hour for filing in the clerk’s office on that day. It was filed, however, the next day, which was September, at 8.50 a. m. On Monday, at about nine o’clock, the sheriff seized the mortgaged property under the executions issued in favor of the plaintiffs, and an hour or two later the defendant took possession under his third mortgage, which was not yet due, but it contained the usual safety claims. During the period covered by all the piortgages, the mortgagee occupied a desk in the store where the mortgaged property was kept, was familiar with the business of the mortgagor' and knew that he was selling the property therein, which was a stock of hats, caps, and furs. The last mortgage was given upon the request of the defendant, who insisted that it should contain a clause requiring that the proceeds of all sales should be applied upon his debt, but Holbrook refused to give it in that form, and it was executed without it, although Eider warned him that he must take the consequences. The defendant intended to foreclose this mortgage at once, as he had become alarmed at the way things looked, but waited from Saturday, the 28th, until Monday, the 30th, at the request of an outside creditor, who was negotiating for the purchase of the stock, with the view of securing his claim. Mr. Eider did not know that Mr. Holbrook was owing any debts aside from those alluded to. The defendant was in and out of the store during the forenoon of Saturday, but at 2 P. M. went to Henderson Harbor, to spend Sunday with his family; and upon his return at about 9 o’clock on Monday morning found the sheriff in possession. Eo goods were sold from the store on Monday, but on Saturday sales were made by the clerk in charge to the amount *718 of $12.30, of which he retained. $6 for his weekly wages, and. turned the rest over to Holbrook, who used some of it for himself. There is no evidence of any express agreement between the mortgagor and mortgagee that the former might sell the property and use the proceeds as he saw fit, nor am I satisfied that there was any implied agreement to that effect. There was, doubtless, an expectation on the part of Holbrook that he would be permiited to go on in the future as he had in the past; but, as was held in Brackett v. Harvey, 91 N. Y. 214, this is not enough, for an actual agreement having “the conscious and concurrent assent of both" parties is required to vitiate the mortgage. I think the evidence warrants the conclusion that the defendant did not, even by implication, assent to any such arrangement, but that he had actually determined to take possession and foreclose at puce, and was only prevented from doing so by the request of another creditor. It is true that he knew, or had good cause to believe, that sales were made on Saturday, and that Holbrook did not intend to apply the proceeds upon the mortgage ; but, under the circumstances, Í cannot draw the inference from that fact of an implied agreement of the character under consideration. It does not follow that he assented to it simply because he knew it. It had been held that the fact that the mortgagor continues to sell goods covered by the mortgage for a few days, with the kno wledge of the mortgagee, in the absence of proof that this was pursuant to an agreement between the parties, does not render the mortgage fraudulent in law as against other creditors. Frost v. Warren, 42 N. Y. 204. As Was said in Hangen v. Hachemeister, supra, is is the agreement authorizing the mortgagor to sell that vitiates the mortgage, not the fact that a sale was made. The complaint should be dismissed, with costs, and findings may be prepared accordingly.