In re MARINE CONSTRUCTION & DRY DOCK CO.

(Circuit Court of Appeals, Second Circuit. February 28, 1906.)

No. 103.

1. CHATTEL MORTGAGES—VALIDITY—AGREEMENT FOR SALE AND REPLACEMENT OF PROPERTY BY MORTGAGOR.

Under the New York authorities, a chattel mortgage on property in that state. including materials in a shipyard, which expressly gives the mortgagor the right before default to sell, use, and replace any or all of the property and to use the money received therefor in its business generally. is void as against the trustee in bankruptcy of the mortgagor, notwithstanding a provision that the security shall not be thereby in any way reduced or impaired.

2. SAME—AFTER-ACQUIRED PROPERTY—LAW OF NEW YORK.

A mortgage given by a shipbuilding company which subsequently became bankrupt covered all the materials, tools, vessels, and other personal property in its yards, and contained an after-acquired property clause. It also contained a recital that the mortgagor was doing a general manufacturing business, and that the mortgage was given to secure money borrowed for the purposes of its business. *Held*, that such recitals did not amount to an agreement that the mortgagor should have the right to sell or use the materials mortgaged and apply the proceeds to its general use, and that, under the New York decisions which governed the case. the mortgage was valid as to such property or materials as were on hand when it was given, and remained so and passed into the hands of the receiver in bankruptcy, but was not valid as to after-acquired property, and therefore not a lien on a houseboat in the yards chiefly built with labor and from materials furnished after it was given, although some of the material may have been taken from the stock then on hand.

Petition for Revision of Proceedings of the District Court of the United States for the Eastern District of New York, in Bankruptcy.

This cause comes here upon appeal from an order of the District Court, Eastern District of New York (135 Fed. 921), adjudging that two certain mortgages did not constitute liens upon the materials and stock in trade of the mortgagor, nor upon a certain houseboat, which was under construction at the time of the institution of the proceedings in bankruptcy. The facts are sufficiently set forth in the opinion.

D. B. Simpson, for petitioners.

C. P. Moser, for respondent.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The bankrupt was a corporation engaged in the construction and repairing of boats of various kinds. On September 1, 1902, it purchased certain real estate and a shipbuilding plant thereon at Mariner's Harbor, Staten Island, subject to a purchase-money mortgage of $40,000. This is referred to in the record as the first mortgage, and about it there is no controversy. On September 1, 1902, the company executed a second mortgage for $37,500, securing its bonds to that amount, which bonds are owned by petitioner. This instrument enumerated as the property by it conveyed the real estate (described by metes and bounds) and also:

"All the dry docks, marine railways, piers, docks, wharves, rails, wires, lumber, iron, steel, metals, timber, coal, motors, machinery, boilers, furnaces, houses, engines, workshops, stock, tools, implements, materials, improvements, boats, vessels, ships, barges, scows, tenements and hereditaments now owned by the manufacturing company or hereafter at any time or howsoever acquired by it."

It is not disputed that this mortgage, and also the third mortgage, hereinafter referred to, were properly executed, and that all the statutory requirements for the filing and recording of chattel mortgages were scrupulously adhered to. The second mortgage contained this provision:

"Third. Until default shall be made in the payment of the principal or interest moneys, or any part thereof, payable upon the said bonus and coupons, as the same shall respectively become due and payable, or in the performance of the covenants herein expressed to be performed by the manufacturing company, its successors and assigns, the manufacturing company shall be suffered and permitted by the trustee to remain in the full possession, control and use of said real and personal property, and the other premises and property herein expressed to be hereby mortgaged, with the appurtenances, and to receive and use the tolls, income, rents, issues and profits thereof, and all moneys payable thereon and receivable or derivable therefrom, and shall likewise be suffered and permitted at all times, and from time to time, as the proper management of the business of the manufacturing company may require, to sell, alter, exchange, and to repair, remove and replace any materials, supplies and stock, stores, machinery, tools and implements hereby mortgaged, provided always that the security of said bonds shall not thereby be in anywise reduced or impaired.

"And the manufacturing company shall have the further right at all times, and from time to time to sell and convey any and all of its real estate, buildings and fixtures, free from the lien of these presents, which shall no longer be either useful or necessary in the proper and judicious management of the business and interests of the manufacturing company; provided, however, that no such sale or conveyance shall be made without the express assent in writing of the trustee, which is hereby expressly authorized to release under its seal from the operation and effect of this mortgage any such property so sold or exchanged for other property in good faith, and the sole and conclusive evidence to the trustee of its duty to execute such release shall be a certified copy of the resolution of the board of directors of the manufacturing company requested it to do; and provided further, that all property taken in exchange for or purchased with the proceeds of any real estate, buildings or fixtures, sold or assigned as above expressed, shall forthwith become and

be under and remain subject to the lien of this indenture, in the same manner and to the same extent as if the same had been originally mortgaged hereby and hereunder:

"The net cash proceeds of any lands and premises sold and released, as in this article provided, shall be applied by the manufacturing company, in good faith and so soon as may be. toward the acquisition of additional real or personal property of not inferior value, or shall be applied to the payment of the first mortgage upon the premises herein described, or to the redemption, as herein provided, of bonds of the issue hereby secured. All bonds of the issue hereby secured which may be redeemed as in this article provided, shall, with the coupons thereto attached, be canceled forthwith by the trustee and destroyed."

The company continued in business, buying materials, and working them up into boats and repairs thereon until December 31, 1903, when proceedings in involuntary bankruptcy were begun and a receiver appointed. The receiver took possession of the plant, unfinished work, and materials, and he or the trustee continued the business until September 15, 1904, when the entire property was sold. The present controversy is concerned with the distribution of so much of the proceeds as were realized by the sale of the personal property, and of an unfinished houseboat.

The district judge held that the second mortgage was fraudulent in law because it provided expressly (see first paragraph of clause 3, supra) that the mortgagor was to go on and sell part of the materials and use the money received therefor generally in its business and for its personal use. This decision was based upon Robinson v. Elliott. 22 Wall. 513, 22 L. Ed. 758, and Southard v. Benner, 72 N. Y. 424. In view of the decisions in the state courts of New York, we are inclined to sustain this ruling, although, were the question to be decided solely upon federal authority, the opinion in Etheridge v. Sperry, 139 U. S. 266, 11 Sup. Ct. 565, 35 L. Ed. 171, which distinguishes Robinson v. Elliott, might be persuasive to a different conclusion.

It is abundantly settled by authority, as petitioner contends, that (all requirements as to filing, recording, etc., being complied with) a mortgagee of materials may agree with the mortgagor that the latter shall remain in possession of the goods and may sell them from time to time, provided that the proceeds of all thus sold are applied either to payment on the mortgage or to reducing the amount of some prior lien or to the purchase of additional property, of not inferior value to take the place of what is sold; the mortgage being made broad enough to cover it. Mitchell v. Winslow, 2 Story, 630, Fed. Cas. No. 9.673; People's Savings Bank v. Bates, 120 U. S. 556, 7 Sup. Ct. 679, 30 L. Ed. 754; Etheridge v. Sperry, 139 U. S. 266, 11 Sup. Ct. 565, 35 L. Ed. 171; Frost v. Warren, 42 N. Y. 204; Brackett v. Harvey, 91 N. Y. 214. But the proviso at the end of the first paragraph of the third clause, "provided always that the security of said bonds shall not thereby be in any wise reduced or impaired," is hardly sufficient to modify to the extent required the specific language which precedes it.

Reference is made to the third paragraph of the same clause, which provides that certain cash proceeds "shall be applied by the manufacturing company, in good faith and so soon as may be, toward the acquisition of additional real or personal property of not inferior value,

or shall be applied to the payment of the first mortgage upon the premises herein described, or to the redemption, as herein provided, of bonds of the issue hereby secured." A careful examination of the whole third clause, however, shows that this provision refers only to the cash proceeds of real estate, buildings, and fixtures, whose sale is provided for in great detail in the second paragraph. Moreover, the very care with which this disposition of the proceeds of "lands and premises" is restricted to legitimate purposes may be taken as importing an agreement not to apply a like restriction to the proceeds of sales of materials. As to the second mortgage, therefore, we affirm the conclusion of the district judge.

The third mortgage is dated September 25, 1903. The description of the property is identical with that in the second mortgage, covering, besides the real estate, "all the dry docks, marine railways, piers, docks, wharves, rails, wires, lumber, iron [etc., enumerating other materials] * * * boats, vessels, * * * now owned by the company or hereafter at any time or howsoever acquired by it."

The record shows that the stock of materials taken possession of by the receiver (and subsequently by the trustee) were all purchased after the making of the second mortgage and prior to the making of the third mortgage, except a small amount of material to the value of about $200, subsequently purchased. The mortgage contains the "after-acquired property" clause. This has been held valid and effective by the federal courts (Central Trust Co. v. Kneeland, 138 U. S. 419, 11 Sup. Ct. 357, 34 L. Ed. 1014), but the case at bar must be disposed of in accordance with the decisions in the state courts (Thompson v. Fairbanks, 196 U. S. 522, 25 Sup. Ct. 306, 49 L. Ed. 577). Under the authority of Rochester Distilling Co. v. Rasey, 142 N. Y. 570, 37 N. E. 632, 40 Am. St. Rep. 635, and N. Y. Security & Trust Co. v. Saratoga Gas, etc., Co., 159 N. Y. 137, 53 N. E. 758, 45 L. R. A. 132, it must be held that as against general creditors (now represented by the trustee) the mortgage does not operate as a lien upon after-acquired materials, and therefore does not cover the $200 for which the trustee sold them. The mortgage, however, does operate as a lien upon all the materials which had been purchased before it was executed, unless it be held void for some reason. It is correct in form, and no point is made that there was any irregularity in filing or recording. The District Court held that it was tainted with the same defect as the second mortgage, an agreement, namely, made at the time to the effect that the mortgagor might sell materials and apply the proceeds to its general uses. The two instruments, however, are not alike; the latter mortgage does not contain the third clause, whose effect we have discussed. The language relied upon is a statement in the mortgage that the mortgagor was a corporation created "for the purpose of doing a general manufacturing business," and a recital that the board of directors had determined "to borrow from the said party of the second part for the purposes of its business the sum of $11,000." We do not think this is sufficient proof of an agreement that the proceeds of materials covered by the mortgage and subsequently sold may be used for the general purposes of the corporation.

Whether any of the materials in hand when the mortgage was executed were in fact sold does not appear, much less, what was done with the proceeds. To avoid the operation of the mortgage upon the materials on hand when it was made, and which were still there when the receiver was put in possession, the evidence must be sufficiently strong to establish a contemporaneous agreement to the effect that "security was not the leading object" of the mortgage, but an attempt to hinder, delay, or defraud creditors. The proof does not satisfy us that there was such an agreement. The mortgage therefore was a lien on such of the materials as were purchased before it was executed and remained in the possession of the corporation until the receiver took charge. As to this branch of the cause, we cannot concur with the district judge. The decree should be modified, so as to give petitioner the benefit of lien of the third mortgage on proceeds of materials, except as to $200.

The houseboat was begun in September, 1903, whether before or after the execution of the mortgage does not appear. The greater part of the material used therein was "furnished" subsequent to September 25th. How much of that "furnished" was taken from stock on hand prior to that date and how much from materials subsequently purchased is not shown. The greater part of the labor performed thereon was performed subsequent to that date. It seems to be covered by the state decisions cited above (Rochester Distilling Co. v. Rasey, 142 N. Y. 570, 37 N. E. 632, 40 Am. St. Rep. 635; N. Y. Security & Trust Co. v. Saratoga Gas Co.), and must be held to be after-acquired property not covered by the mortgage. The decision of the District Court as to proceeds of the houseboat is therefore affirmed.

The order is reversed, and cause remanded, with instructions to modify the same so as to conform to the views expressed in this opinion.