In re HARTMAN.

(District Court, N. D. New York. February 20, 1911.)

1. CHATTEL MORTGAGES (§ 188*)—VALIDITY AS AGAINST CREDITORS—RESERVATION OF RIGHT TO SELL.

A chattel mortgage is not void because of a provision permitting the mortgagor to sell the mortgaged property, provided it also requires the mortgagor on making sale to pay over the proceeds and apply them to the payment of the mortgage debt, and the mortgagee has the right to constitute the mortgagor his agent to sell the property and to account and pay over the proceeds in reduction of the debt.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 393–404; Dec. Dig. § 188.*]

2. CHATTEL MORTGAGES (§ 188*)—VALIDITY AS AGAINST CREDITORS—RESERVATION OF RIGHT TO SELL.

Though a provision in a chattel mortgage authorizing sale by the mortgagor on unrestricted and unlimited credit renders the mortgage void, a mortgage authorizing sales by the mortgagor on credit, but providing that the whole debt should be paid within one year, does not authorize unlimited credit and is valid.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 393–404; Dec. Dig. § 188.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. CHATTEL MORTGAGES (§ 188*)—VALIDITY AS AGAINST CREDITORS—RESERVATION OF RIGHT TO SELL.

A chattel mortgage accompanied by an agreement between the parties, whether found in the mortgage or not, which authorizes the mortgagor to deal with the mortgaged property as his own and to sell it and use the proceeds for his own benefit, is void as to creditors.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 393–404; Dec. Dig. § 188.*]

4. CHATTEL MORTGAGES (§ 201*)—VALIDITY AS AGAINST CREDITORS—EVIDENCE.

It is not necessary to prove expressly an agreement permitting a mortgagor of chattels to deal with the property as his own, selling it and using for his own benefit, but such an agreement may be inferred from the acts and conduct of the parties or from the fact that the mortgagee permits a sale to be made.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 360; Dec. Dig. § 201.*]

5. CHATTEL MORTGAGES (§ 188*)—VALIDITY AS AGAINST CREDITOR—SALE BY MORTGAGOR.

There may be a valid agreement by a mortgagor of chattels to sell the property and purchase other property with the proceeds, if the agreement provides that the newly purchased property is to be brought under the lien of the mortgage by a renewal or by a new mortgage to secure the same debt.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 393–401; Dec. Dig. § 188.*]

6. BANKRUPTCY (§ 178*)—ADMINISTRATION OF ESTATE—SECURED CLAIM.

A trustee in bankruptcy representing general creditors is entitled to take advantage of the invalidity of a chattel mortgage given by the bankrupt on the ground that it is fraudulent as to creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 178.*]

7. CHATTEL MORTGAGES (§ 188*)—VALIDITY AS AGAINST CREDITORS—SALES BY MORTGAGOR.

Where the mortgagee of chattels permits a mortgagor to deal with the property as his own, selling it without accounting for the proceeds, the mortgage cannot be upheld as a lien on any part of the mortgaged property.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 393–404; Dec. Dig. § 188.*]

In the matter of Ernest H. Hartman, bankrupt. Review of the action of the referee in refusing to direct the trustee to turn over certain property to the holder of a chattel mortgage thereon, the trustee claiming such mortgage was void, and also in refusing to allow proof of claim as a secured debt. Order approved and affirmed.

John Conboy, for claimant Kepler.
A. Raymond Cornwall, for trustee.

RAY, District Judge. February 17, 1909, Ernest H. Hartman, the above-named bankrupt, was indebted to his father-in-law, William Kepler, in the sum of $500 for money loaned about February 2, 1907, and Kepler had also indorsed his notes amounting to the sum of $1,855 at that time, which were held or had been discounted by the First National Bank of the Thousand Islands. On that day, February 17, 1909, the said Hartman gave to the said Kepler a chattel mortgage covering his tools, implements, merchandise, furniture, and personal

property of every kind which was more particularly described in his schedule attached to the mortgage. Hartman was a mechanic and was also running a small store in which he had a stock of merchandise worth somewhere from $300 to $500. This mortgage in the schedule signed by Hartman contains this clause:

"And I hereby agree that (as) the items of said stock are sold, I will keep a list of the sales and will pay over the proceeds to William Kepler to be by him applied on the indebtedness for which this mortgage is made and on the notes which he has indorsed for me."

The mortgage itself contained this clause:

"Articles of merchandise shall be paid for when sold, that is, the money received for them shall be paid over to William Kepler when received, and the whole indebtedness shall be paid up in one year from date hereof, that is, on the 17th day of February, 1910."

This mortgage was duly filed and is valid on its face.

The Court of Appeals of the state of New York has many times decided that a chattel mortgage is not per se void because of a provision contained in it permitting the mortgagor to sell the mortgaged property, provided the mortgage also requires the mortgagor on making sales to pay over the proceeds thereof and apply them to the payment of the mortgage debt. This is the normal and proper purpose of a chattel mortgage, viz., to apply the mortgaged chattels to the payment of a mortgage debt. The mortgagee has the right to constitute the mortgagor his agent for the purpose of selling the property and to account to and pay over to the mortgagee the proceeds of the sales in reduction of the debt. Brackett v. Harvey, 91 N. Y. 214, 221; Ford v. Williams, 24 N. Y. 359; Conkling v. Shelley, 28 N. Y. 360, 84 Am. Dec. 348; Miller v. Lockwood, 32 N. Y. 293; Robinson v. Elliott, 22 Wall. 524, 22 L. Ed. 758.

There are cases holding that any clause in a chattel mortgage which permits the mortgagor to sell the property on credit, even if the collections when made are to be turned over to the mortgagee, makes the mortgage void. These cases are not good law. If, however, the clause authorizing sale by the mortgagor permits unrestricted and unlimited credit, the mortgage is void. This appears from the cases already referred to. The mortgage in question, while contemplating a sale on credit, did not contemplate or provide for or permit unrestricted and unlimited credit. The whole debt was to be paid within one year, and it follows that credit must be limited and restricted to the year; otherwise the proceeds of the sales could not be applied to a reduction of the indebtedness.

The difficulty in this case is that the evidence shows beyond any reasonable doubt whatever that the agreement between the mortgagor and the mortgagee was very different from the one recited in the mortgage itself. A chattel mortgage given and filed is fraudulent and void as to creditors when accompanied by an agreement between the parties, whether found in the mortgage or not, which authorizes and permits the mortgagor to treat and deal with the mortgaged property as his own and to sell same and use the proceeds thereof or any

part thereof for his own benefit. That is what was done in this case. Both the mortgagor and the mortgagee, in substance and effect, concede it. The treatment of the property and of the proceeds of sales by the parties to the mortgage shows that this was the agreement and understanding. I so find the fact to be, and the conclusion is irresistible. Kepler says that he did not know whether Hartman applied the proceeds of sales of stock on the notes or not; that Hartman said he would "what he could." He also says, "I knew he (Hartman) had to live." He also says, "Why the agreement was he was to go on and do work and use what stock he required." He also says that he gave Hartman permission to use and sell from the stock "as he required. This was our talk and agreement at the time of the mortgage. He (Hartman) turned over some of the receipts to me when I was there, and some he paid on the notes, presume he used some to live on." He also says that he gave him his consent to sell the stock the proceeds to be turned over, but "I did not get much of it." Also, "I expected he would sell same as any merchant."

Hartman says, in substance, that the agreement was he was to sell, and to sell on credit. He says that he ran a general account and used money collected on accounts for the support of his family. Paid what he could on the notes. Used some of the proceeds of the stock to purchase new stock with. Replenished the stock with proceeds of sale. Hartman also says that from the time the mortgage was given to the time the petition was filed he did not keep an accurate account or list of sales. Also, that Kepler knew what he was doing, and that he sold on credit, and that that was a part of the agreement.

As stated, it is apparent from the evidence given by Kepler and Hartman that the understanding was that Hartman was to carry on his business just as he had done before, doing work and using stock at will in doing his work as a mechanic, selling on credit, using proceeds of sales to replenish the stock, and, when necessary, for the support of his family, and that he was to pay what he could from the general proceeds of his business, work, and sales of stock on the notes. The result of this was that the mortgage was executed and put on record as a shield against the claims of all creditors aside from Kepler and to put Kepler in a position where he could take the stock, tools, etc., at any time the other creditors of Hartman should undertake to collect their claims. Kepler never called Hartman to an account or required him to keep an accurate account of the sales of stock, although on two or three occasions he looked over the books. It appears from the evidence of Kepler himself that he did not require Hartman to comply with the agreement written in the mortgage, but, on the other hand, knowingly permitted him to violate it. He never chided or brought him to task for violating the written contract. In short, Kepler knowingly and willfully acquiesced in all that Hartman did and confesses he expected him to live. This is equivalent to a confession that the understanding was to run the business as he had run it, selling stock and using the proceeds to replenish the stock, and with his earnings to support his family and pay what he could on the notes and other indebtedness. Clearly this was a fraud upon

creditors, and the mortgage was therefore void. Southard v. Benner, 72 N. Y. 424, 431; Hangen v. Hachemeister, 114 N. Y. 566, 21 N. E. 1046, 5 L. R. A. 137, 11 Am. St. Rep. 691; 6 Cyc. 1114, and cases there cited. It is not necessary to prove the making of such an agreement expressly. That it was made may be proved by the acts and conduct of the parties. It may be inferred even from the fact that the mortgagee permits such sales to be made. Hangen v. Hachemeister, supra, and Southard v. Benner, supra. There may be a valid agreement to sell the mortgaged property and purchase other property with the proceeds, provided the agreement provides that the newly purchased property is to be brought under the lien of the mortgage by a renewal of same, or probably by a new mortgage therein, to secure the same debt. See Brackett v. Harvey, supra. The same case holds there may be a sale on credit provided the notes taken, and undoubtedly the accounts, are to be turned over to the mortgagee to be applied on the debt. See, also, Brown v. Guthrie, 110 N. Y. 435, 18 N. E. 254. Here, however, the sales on credit were in the usual way "sell same as any merchant." The accounts were treated as the property of Hartman, and he collected at will and used the collection as he saw fit, keeping no accurate account; the mortgagee recognizing that he must live and support his family, except as he was to apply so much of the proceeds "as he could" on the debt or notes indorsed by the mortgagee.

If Hartman had done the things he did do without the knowledge or acquiescence of Kepler, no legitimate inference would obtain that the agreement was other than that expressed in the mortgage and its schedules. But the acts of Hartman were open and generally known to Kepler, and his statements under oath show that his understanding with Hartman was that the business was to be run in the usual way, the stock, etc., to be replenished in the usual way, and out of the proceeds of the business, selling merchandise, making repairs and building, and in so doing using up stock, the mortgagor was to live and support his family, paying what he could on the debt and notes. This is precisely what was done by Hartman, he confesses, and acquiesced in by Kepler, and he says, in substance, this was what he expected would be done when the mortgage was given. Courts will do much to protect innocent mortgagees against the unlawful acts of mortgagors, or their acts done without their consent or acquiescence, and such acts should in no case be permitted to raise an inference of fraud or of an unlawful agreement. But when it appears that what was done was in pursuance of a common understanding and with the knowledge and concurrence of both the mortgagor and mortgagee, the conclusion is irresistible that the parties acted pursuant to the agreement actually made, whatever may be found expressed in the mortgage itself. This is especially true when, as here, there was no substantial performance by the mortgagor of the agreement as expressed in the mortgage and no attempt on the part of the mortgagee to exact performance and no complaint that the actual agreement was not being performed.

The trustee representing general creditors is entitled to take advantage of the invalidity of the mortgage. Skilton v. Codington, 185 N. Y. 80, 87, 77 N. E. 790, 113 Am. St. Rep. 885; In re Becde (D. C.) 138 Fed. 441. This mortgage cannot be upheld as a lien on any part of the mortgaged property. Russell v. Winne, 37 N. Y. 591, 97 Am. Dec. 755; Roberts v. Vietor, 130 N. Y. 585, 600, 29 N. E. 1025.

The orders of the referee are approved and affirmed.