### In re NOETHEN.

(District Court, S. D. New York. April 8, 1912.)

BANKRUPTCY (§ 184*)—PROPERTY—CHATTEL MORTGAGE—VALIDITY.

    A chattel mortgage of a shifting stock of wines, liquors, cigars, etc., kept in connection with a restaurant and bar, under provision that the mortgagors remain in "quiet and peaceable possession * * * and free enjoyment of the same," the proceeds being retained by the mortgagors, is void, both as to existing and after-acquired goods, as against the mortgagor's other creditors and his receiver in bankruptcy.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*]

In the matter of Joseph Noethen, individually and as surviving partner of the firm of Heyl & Noethen, bankrupt. Submission on agreed facts. Order entered.

Yankauer & Davidson and Raymond V. Ingersoll, for receiver.
Nathan Burkan and Edward Weiss, for mortgagee claimant.

MAYER, District Judge. This is a submission, upon an agreed statement of facts, of certain questions involving the effectiveness, as against the receiver in bankruptcy, of provisions in a chattel mortgage executed by the firm of Heyl & Noethen of which the bankrupt is the surviving partner and successor in interest.

Heyl & Noethen (and Noethen as successor) were engaged in the restaurant, wine, and liquor business. On or about June 5, 1911, they executed to August Luchow, the other party to this controversy, a chattel mortgage purporting to cover (a) the stock in trade in the premises when the mortgage was made, including wines, liquors, cigars, and other merchandise; (b) the stock in trade purchased between the time of the making of the mortgage and the time when the receiver in bankruptcy took possession, including wines, liquors, cigars, and other merchandise; (c) the fixtures, furniture, and equipment in the restaurant and bar. The validity of the mortgage as affecting the articles under the heading "c" is conceded. The dispute as to the effect of the mortgage is in reference to the articles included under "a" and "b." These articles were, respectively, inventoried separately and were sold by the receiver, who realized certain sums which, less expenses, are claimed both by the mortgagee and by the receiver.

Heyl & Noethen were engaged in the restaurant, wine, and liquor business, and, as set forth in paragraph 12 of the agreed statement of facts—

"the wines, liquor, and merchandise contained in the bankrupt's premises at the time of the execution of the chattel mortgage as well as the wines, liquors, and merchandise thereafter purchased were at all times used by the firm of Heyl & Noethen and by the bankrupt as surviving partner as stock in trade, and as such were bought and sold and dealt in from day to day in the usual course of trade, all the proceeds being retained by them and no part being turned over to said August Luchow, the mortgagee."

The controversy here submitted is whether, as against the other creditors, and as against the receiver in bankruptcy, the mortgagee had any valid lien upon this shifting stock of merchandise which had been bought and sold and dealt in from day to day by the bankrupt.

The chattel mortgage in question purported to grant, bargain, and sell unto the party of the second part, among other things, the "stock in trade" and "other goods and chattels mentioned in the schedule." The schedule covers, among other things, "all wines, liquors, cigars, supplies, and stock." Until default the mortgagors were to "continue in the quiet and peaceable possession of the goods and chattels and the full and free enjoyment of the same." So far as this "full and free enjoyment" of the perishable restaurant supplies was concerned, use or sale of them by the mortgagor must have been contemplated; and it is conceded that all such merchandise stock in trade was dealt in and bought and sold from day to day in the usual course of trade. The chattel mortgage does not contain any agreement that proceeds from the daily sales of said merchandise were to be turned over to the mortgagee or applied to a reduction of the mortgage debt. It is further conceded that all the proceeds were retained by the mort-

gagors, and that no part thereof was turned over to Luchow, the mortgagee. It may be fairly inferred that this course was acquiesced in by the mortgagee and continued from June 5, 1911, when the mortgage was made, until January 9, 1912, when the petition in bankruptcy was filed. Such a mortgage on a shifting stock of merchandise, obviously intended for daily sale, and the proceeds whereof go to the mortgagor, is void as against creditors and as against a receiver in bankruptcy, even though under some other circumstances equity might enforce it as between the parties themselves. The reasoning in Skilton v. Codington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885, Zartman v. First National Bank, 189 N. Y. 267, 82 N. E. 127, 12 L. R. A. (N. S.) 1083, and In re Hartman (D. C.) 185 Fed. 196, 26 Am. Bankr. Rep. 76, is conclusive, and further citation of authority seems unnecessary.

The main reliance of the claimant is Brackett v. Harvey, 91 N. Y. 214. It is unnecessary to determine whether that case has been distinguished, for there the facts were different from those here under consideration. In that case there was a provision in the mortgage authorizing the mortgagor to sell the mortgaged property and apply the proceeds toward the payment of the mortgage debt. It was further provided that a part of the proceeds of sale could be used to purchase other property conditioned upon such after-acquired property being brought in and subjected to the mortgage lien by a renewal of the mortgage, and in point of fact the mortgagor continued periodically to execute chattel mortgages, each of which contained the recital that it was executed in pursuance of the original mortgage. In the case at bar the situation was entirely different. This stock of wines and cigars was not, for instance, in a warehouse, nor were the proceeds from sales to be applied to the reduction or payment of the mortgage debt. Manifestly this merchandise necessary to the daily conduct of a restaurant business was to be treated as the property of the mortgagees, replenished when necessary, and the proceeds thereof used by the mortgagees in carrying on their business.

The claimant cannot take refuge behind mere words and invoke a so-called covenant of quiet possession in favor of a mortgagee of a stock of wines, liquors, and cigars in a going restaurant business. What was said by Judge Vann in Zartman v. First National Bank, supra, well applies here:

"If the question had arisen between the parties to the mortgage, equity might recognize a contract to give a lien and treat it as an actual lien, but it arises between the mortgagee and the general unsecured creditors who had little, if anything, to rely upon except the shifting stock which, directly or indirectly, they themselves had furnished. The credit extended by them enabled the mortgagor to carry on business, and if the product of that credit goes to the mortgagee, not only are they helpless, but, if the law so declared, hereafter manufacturing corporations, needing credit, will be helpless also. If it is understood that a corporate mortgage given by a manufacturing corporation may take everything but accounts and debts, such corporations, with a mortgage outstanding, will have to do business on a cash basis or cease to do business altogether."

The mortgage is void both as to the stock of merchandise on the premises at the time of the delivery of the mortgage, and as to the stock after acquired.

It is proper to say that there is no suggestion of actual fraud and the question is solely one of law, to the speedy and inexpensive determination of which the receiver and counsel for both parties have much contributed.

Ordered accordingly.