## In re HARNDEN.

(District Court, D. New Mexico. October 22, 1912.)

### No. 6.

1. COURTS (§ 372*)—FEDERAL COURTS—FOLLOWING STATE DECISIONS—VALIDITY OF CHATTEL MORTGAGE.

On the question of the validity of a chattel mortgage, the federal courts follow the decisions of the state courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 977–979; Dec. Dig. § 372.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

2. CHATTEL MORTGAGES (§ 187*)—VALIDITY—MORTGAGE ON STOCK IN TRADE.

Under the decisions of the Supreme Court of New Mexico, a chattel mortgage on a retail stock of goods is not void as matter of law because the mortgagor retains possession and is permitted to sell in the usual course of trade, without accounting to the mortgagee for the proceeds.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 372–392; Dec. Dig. § 187.*]

3. BANKRUPTCY (§ 184*)—MORTGAGE ON STOCK IN TRADE—STATE LAWS.

A bankrupt, who was a retail merchant, a year before his bankruptcy executed a chattel mortgage on the goods then in his store and such as should be subsequently placed there to a bank, which was next door to his store. While there was no provision on the subject in the mortgage, he continued to sell goods in the usual course of business, and did not account to the bank for the proceeds. The bank did not record the mortgage until more than two months after its execution. *Held*, that under the law of New Mexico, as established by decision, in the absence of actual fraudulent intent, the mortgage was valid, except as to creditors without notice who became such between the dates of its execution and recording.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*]

In the matter of Eber Harnden, bankrupt. On petition for review of action of referee in rejecting claim of the Dexter State Bank under a chattel mortgage. Reversed.

Reid & Hervey, of Roswell, N. M., for petitioner.
A. J. Nisbet, of Roswell, N. M., opposed.

POPE, District Judge. The present review involves a decision upon the validity of a mortgage held by the Dexter State Bank against Harnden. The facts are that on December 9, 1910, Harnden borrowed from the bank $600, secured by a chattel mortgage upon his stock, which was never recorded. On March 8, 1911, the bank made a further loan, and a new note was given for the old loan of $600 and the new loan, aggregating $950, which note was made payable in 30 days and was secured by a new chattel mortgage. The new mortgage was not placed upon record until May 26, 1911. The reason for this, as stated by the cashier of the bank, was because it was not their custom to record mortgages unless occasion required. The mortgage was not only upon the stock then in hand,

but also upon after-acquired stock. Harnden was conducting a retail business next door to the bank, and notwithstanding the mortgage he continued to sell at retail until closed by execution the early part of 1912. The bank took no steps to foreclose this mortgage, but filed an affidavit of renewal on February 2, 1912, thus complying with the statute, which requires such renewal affidavit to be filed within 30 days preceding the expiration of a year from the original filing for record.

While the mortgage contains no stipulation that the business was to be continued, and while it contains no stipulation that any accounting was to be made to the bank from the sale of goods, the surroundings of the parties would indicate that the bank knew that the business was to be continued and the goods to be sold in due course of retail trade, and that without express agreement it expected to be paid from time to time such amounts upon its indebtedness as the condition of the business justified. It appears from the evidence that the bank had such intimate knowledge of the condition of Harnden's business from the very inception of its mortgages as to be advised that his financial condition was precarious. This knowledge resulted from its having collections sent it against him and from its acquaintance with his business, derived from being next door to him. There was no agreement between Harnden and the bank that the mortgage of March 8, 1911, should be withheld from record, and the bank cashier testified that it was finally recorded on May 26, 1911, only because Harnden was conducting his business in such a way as to lead the bank to consider it to its interest to place this mortgage of record.

Upon this state of facts the referee held the mortgage invalid. The referee seems to have determined this as a matter of law from the foregoing undisputed facts. He says in the course of his opinion:

"There may be actual fraud of creditors, without the intent to defraud, and in the consideration of this case it is not the purpose of the referee to cast any reflection upon the intention of the parties to this mortgage."

From this finding it would appear that the referee's view was that, with no intention to defraud, the making of a mortgage under such circumstances constituted a legal fraud upon the rights of creditors and was therefore void.

The questions certified to the court by the referee are as follows:

"(a) As a matter of law, is a chattel mortgage containing a clause providing for a lien on goods afterward purchased by the mortgagor, in the regular course of trade, with no provision for any accounting for the goods sold, or for applying any of the proceeds of goods sold, on the mortgage debt, valid as against wholesale merchants who sold the goods to the mortgagor?

"(b) Is a chattel mortgage given by a merchant on his stock of goods to secure a note due in 30 days, mortgage not recorded till after the maturity of the note, the mortgagor continuing to buy and sell goods, in the regular course of trade, with the full knowledge, consent, and assistance of the mortgagee, no effort to take possession of the goods or to foreclose the mortgage for a year after maturity of note, the mortgagee having full knowledge almost from the time of the making of the mortgage that the mortgagor was unable to pay his debts, in a failing condition, and on the verge of bankruptcy, with

creditors pressing him on every side, a valid lien on goods purchased by the mortgagor under such circumstances?

"(c) Is a chattel mortgage containing a clause providing for a lien on 'all goods now in said store, or hereafter placed there,' a valid lien on goods subsequently purchased from wholesale merchants in the regular course of trade, where it is shown that the mortgagor, with the full knowledge and consent of the mortgagee, was permitted to continue business, to buy and sell goods in the regular course of trade, make no report to the mortgagee, and thus permitted and assisted by the mortgagee allowed to sell a large part of the original stock of goods and to incur large new indebtedness for new goods, valid against creditors made under such circumstances?"

The question of the validity of a chattel mortgage upon a stock of goods, with an after-acquired clause, where the mortgagor is left in possession with right to continue the business, has been the subject of much consideration from the courts, and there has been such a diversity of opinion from the courts as to leave the matter involved in great confusion. The divergence of the courts is indicated by 6 Cyc. 1104–1120. It is believed that the current of state authority is to the effect that where such a mortgage is accompanied with an agreement, either made collaterally or embodied in the mortgage, that the mortgagor shall account for the proceeds to the mortgagee, the mortgagor is in that case considered as the agent of the mortgagee for the management of the stock, and the mortgage is considered valid. If, on the other hand, there is no such understanding the mortgage is void.

The line of cleavage seems to be as to whether the mortgage is made for the benefit of the mortgagee or the mortgagor. If the mortgagor is allowed to dispose of the stock without any understanding that he is to account for the proceeds, the arrangement is deemed one primarily for his benefit, and, as it acts as a shield between him and his creditors, it is considered fraudulent as to them. On the other hand, if the mortgagor is by express understanding to account to his mortgagee for the proceeds, the instrument is deemed to be for the benefit of the mortgagee and is allowed to stand. There are states, however, that hold that, notwithstanding the absence of an agreement to account for the proceeds, the mortgage is still not void as a matter of law. An illustration of this is found in Peabody v. Landon, 61 Vt. 318, 17 Atl. 781, 15 Am. St. Rep. 903, where the matter is very lucidly discussed.

[1] Whatever, however, may be the condition of the state decisions, the question, so far as it is to be decided by a federal court, is considerably narrowed by the well-settled principle that the federal courts, in determining the validity of the chattel mortgage, follow the decisions of the state courts. This doctrine proceeds upon the principle that the validity of a chattel mortgage, executed within a state, is a matter for the state, and the federal courts will accept the settled law of each state as decisive of the question. Etheridge v. Sperry, 139 U. S. 266, 11 Sup. Ct. 565, 35 L. Ed. 171; Bamberger v. Schoolfield, 160 U. S. 159, 16 Sup. Ct. 225, 40 L. Ed. 374; Hartford Ins. Co. v. Chicago Co., 175 U. S. 100, 20 Sup. Ct. 33, 44 L. Ed. 84; Thompson v. Fairbanks, 196 U. S. 516, 522, 25 Sup. Ct. 306, 49 L. Ed. 577; Humphrey v. Tatman, 198 U. S. 91,

.25 Sup. Ct. 567, 49 L. Ed. 956; In re Geiver (D. C.) 193 Fed. 128;
Dooley v. Pease, 180 U. S. 126, 21 Sup. Ct. 329, 45 L. Ed. 457;
Swager v. Smith, 194 Fed. 762, 114 C. C. A. 482, and cases cited;
Holt v. Crucible Co., 224 U. S. 262, 32 Sup. Ct. 414, 56 L. Ed. 756;
Knapp v. Milwaukee Co., 216 U. S. 545, 30 Sup. Ct. 412, 54 L.
Ed. 610.

So carefully has this doctrine been guarded that the Supreme
Court of the United States, while following what is apparently the
law of the state as to the chattel mortgage then under consideration,
has said that, if this apparent rule should afterwards be decided by the
state court to be improperly announced, it would be the duty of the
federal Supreme Court thereafter to modify its views accordingly.
Humphrey v. Tatman, 198 U. S. 91, 93, 25 Sup. Ct. 567, 49 L. Ed.
956. It becomes a question, therefore, in determining this matter,
as to the condition of the New Mexico decisions. If the courts of
this jurisdiction have been aligned on one side or the other of this
mooted question, it becomes simply a matter for this court, having
ascertained that, to follow such decisions. Of course, if not, then
it becomes a matter for the court to determine upon principles of
general law, in the light, however, of decisions from the Supreme
Court of the United States.

[2] There are three New Mexico decisions which bear upon this
subject: Spiegelberg v. Hersch, 3 N. M. (Gild.) 281, 4 Pac. 705;
First National Bank of Roswell v. Stewart, 13 N. M. 551, 86 Pac.
622; First National Bank of Albuquerque v. Haverkampf, 16 N. M.
497, 121 Pac. 31. In the first of these cases the conclusion of the
court seems to have been one of fact rather than of law, and the
holding was that the mortgage given in that case was void. There
are, however, undoubtedly expressions in that decision to the ef-
fect that the giving of a mortgage on personal property with power
to dispose of it for the benefit of the mortgagor alone is a mort-
gage in fraud of creditors and will not be upheld. This decision
is based largely upon Robinson v. Elliott, 22 Wall. 513, 22 L. Ed.
758, to be presently considered.

In First National Bank of Roswell v. Stewart, there was no stipu-
lation that the goods should be sold at retail, and there was no evi-
dence in the case that the mortgagee bank knew that the sale was
being continued. The question did not necessarily arise in that case,
therefore, as to whether possession of a retail stock by the mortgagor,
with power to continue the business, rendered the mortgage upon
such stock void. The court, however, waiving this, proceeds to a
discussion of the question, and holds that such an arrangement, even
in the absence of an agreement to account to the mortgagee, is not
void as a matter of law, but that the case is one of fact, to be de-
termined upon the intent of the parties in the light of all the circum-
stances of the transaction. The court, upon the authority of Ethe-
ridge v. Sperry, 139 U. S. 266, 11 Sup. Ct. 565, 35 L. Ed. 171, ques-
tions Spiegelberg v. Hersch, supra, and adopts as its view the expres-
sions from Jones on Chattel Mortgages, §§ 425–435, to the following
effect:

"That the doctrine of absolute fraud arising in a mortgage of merchandise, from the mortgagor's retaining possession, with the power of disposal in the usual course of trade, is not supported by any preponderance of authority, that it is contrary to sound principles of jurisprudence, * * * that the qualifications of the doctrine made by leading courts have in a large measure destroyed its force, and are indicative that these courts themselves wish to be rid of the whole of it."

While, in view of the facts in the case as above stated, much of this latter is in the nature of dictum, it clearly shows the view of the Supreme Court of New Mexico to be that retained possession with power to sell and without any agreement to account is not legal fraud invalidating the mortgage.

In Bank v. Haverkampf, supra, the possession was left with the mortgagor, with power to continue the business, and there was also an agreement that the mortgage was to be withheld from record. In that case, however, there was an express agreement, as a part of the consideration of the loan secured by the mortgage, that the mortgagor was in the future to make purchases only for cash, and that he should use the proceeds of the business so far as available to the reduction of the mortgage debt. It was explained that the withholding of the mortgage from record was due to the bank's confidence in the mortgagor, and because of the belief that no subsequent creditor would be prejudiced, in view of the agreement that future stock was to be bought for cash. This case upon its facts is thus brought within the rule, generally adopted, that where there is an agreement to account for the proceeds the mortgage is not void. The Supreme Court of New Mexico, however, in disposing of the case, considers it upon a wider basis. Quoting Bank v. Stewart and Etheridge v. Sperry, it holds in effect that it is contrary to sound principles of jurisprudence to consider a mortgage on merchandise legally fraudulent because of the mortgagor's retaining possession with power of disposal in the usual course of trade. In the light of the facts of this case, as in the Stewart Case, the general observations of the court upon this last doctrine are likewise more or less dicta; but, as in the Stewart Case, the views expressed, even if, because dicta, not absolutely controlling as authority, yet are indicative of the views of the highest court of New Mexico.

This conclusion as to the condition of the New Mexico law renders unnecessary a consideration of the federal authorities on the subject. It does not seem improper to state, however, that Etheridge v. Sperry must be considered a modification of Robinson v. Elliott. In re Marine Co., 144 Fed. 649, 75 C. C. A. 451. In the former case the court points out that our recording statutes, which are available for inspection to any person contemplating an extension of credit to a retail merchant, afford every safeguard against secret liens, and thus remove one of the chief causes which have led courts to declare invalid mortgages with retained possession and power to conduct the business in the mortgagor. It will be noted that the Supreme Court of the United States in Etheridge v. Sperry declares the decisions of the Supreme Court of Iowa to rest upon sound principles, and that court has constantly declared a mortgage such as the present one to

be not void as a matter of law. See cases cited in Etheridge v. Sperry, 139 U. S. 276, 11 Sup. Ct. 568, 35 L. Ed. 171.

Many of the federal courts of first instance have dealt with this subject, but in doing so the decision was necessarily merely expressive of the state law, where such had been declared by the courts of the state. This is revealed to some extent by the following cases: U. S. Rubber Co. v. American Co., 181 U. S. 434, 451, 21 Sup. Ct. 670, 45 L. Ed. 938; Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956; Knapp v. Milwaukee Co., 216 U. S. 545, 30 Sup. Ct. 412, 54 L. Ed. 610; Bank v. Camden Co. (C. C. Ark.) 142 Fed. 257; In re Marine Co. (C. C. A. N. Y.) 144 Fed. 649, 75 C. C. A. 451; In re Davis (D. C. N. Y.) 155 Fed. 671; In re Perlhefter (D. C.) 177 Fed. 299, 304; In re Hartman (D. C. N. Y.) 185 Fed. 196; In re Noethen (D. C. N. Y.) 195 Fed. 573; In re Geiver (D. C. N. D.) 193 Fed. 128; Johansen Bros. Shoe Co. v. Alles (C. C. A. Mo.) 197 Fed. 274; In re Volence (D. C.) 197 Fed. 232.

[3] It follows, therefore, that the questions certified by the referee must each be answered in the affirmative. Since the decision of the referee in effect answered them in the negative, that decision must be reversed, subject to one consideration, to be now stated. Since, in Etheridge v. Sperry, the recording of the mortgage is considered a matter of such importance in changing the old rule, the failure of the bank from March 8, 1911, to May 26, 1911, to record its mortgage operated necessarily to the prejudice of creditors without notice, if any, during that period, and was calculated to entrap parties into extending credit until a record afforded an opportunity to determine the existence of the mortgage. It is not shown by the transcript that any persons extended credit during that period; if so, the present mortgage must be declared void as to such creditors. In re Bothe, 173 Fed. 597, 97 C. C. A. 547; Post v. Berry, 175 Fed. 564, 99 C. C. A. 186.

Some complaint is also made that the referee not only declared the present mortgage void, but declined to allow the Dexter State Bank to prove its claim as an unsecured claim. The present disposition of the matter, perhaps, obviates any decision upon this question; but it is evident that the referee in so holding overlooked Post v. Berry, supra, a case from the Circuit Court of Appeals of this circuit, and other controlling cases declaring the law on the subject.

The brief of counsel for the bank also complains of the action of the referee in holding a payment received by the bank on one of the collateral notes held by it to be a preferential payment, and in exacting return of this as a condition precedent to participation in the assets. The petition for review does not, however, assign this as error. The appeal, as disclosed by the referee's certificate and the papers sent up therewith, simply runs against the adverse ruling on the validity of the mortgage. The other matter is not, therefore, for present consideration, since it is the duty of the party complaining to clearly point out the error complained of. General Order 27 (89 Fed. xi, 32 C. C. A. xxvii); Collier on Bankruptcy, p. 503.

However, if the facts are within the rule that the receipt and ap-

plication within the four-months period of the proceeds of collateral held prior thereto does not constitute the acceptance of a preference, it is assumed that the matter will be remedied by the referee upon a petition for reconsideration. Otherwise, a petition for review may perhaps still be prosecuted to correct the alleged error.