## MORSE and others *v.* RIBLET.

(*Circuit Court, W. D. Michigan, S. D.* November 8, 1884.)

1. FRAUDULENT CONVEYANCE—CHATTEL MORTGAGE—DECISIONS OF STATE COURT —RULE OF PROPERTY.

    The decisions of the supreme court of a state, under a state statute touching chattel mortgages made in such state, establish a rule of property as binding upon a court of the United States as upon the courts of the state.

2. SAME—POSSESSION OF PROPERTY—RIGHT OF DISPOSAL—FUTURE INDEBTEDNESS.

    Provisions in a chattel mortgage that the mortgagor shall continue in possession of the property and dispose of it in the ordinary course of his business, keeping the stock replenished as nearly as might be, and that the mortgage shall cover subsequently acquired property, and secure present and future indebtedness for goods bought of the mortgagee on credit, do not render the mortgage executed to a creditor in Michigan void on its face as to other creditors of the mortgagee.

3. SAME—FRAUD—QUESTION OF FACT.

    The rule in Michigan is that the question of fraud is one of fact, to be determined from all the facts and circumstances bearing upon the good faith of the transaction, and in the case at bar the evidence does not show fraudulent intent.

Application for Dissolution of an Attachment.

*Fletcher & Wanty,* for plaintiffs.

*W. D. Fuller* and *J. C. Fitzgerald,* for defendant.

WITHEY, J. The mortgage which the defendant gave to McGraw & Co., dated October 20, 1884, presents all the questions bearing upon the alleged fraudulent character of the transaction involved in this application to dissolve the attachment in this case. It appears on the face of the mortgage that the mortgagor was to continue in possession of the stock of goods, and sell and dispose of them in the ordinary course of his business; was to keep the stock replenished as nearly as might be. The mortgage covered subsequently acquired goods put into the stock, and secured present and future indebtedness for goods bought of the mortgagees on credit. The mortgage was given with the understanding that it would enable the mortgagor to keep on in business and pay his debts by disposing of other property and applying the proceeds to their payment. It was understood that he was not able to pay his debts as they matured, but he believed he could pull through and pay if he could get time. The evidence outside of the mortgage shows that the mortgagor depended much on McGraw & Co.'s advice as to how he should deal with his other creditors in reference to giving security, etc., but there was no understanding and agreement as to this. He, subsequent to giving them the mortgage, sought their advice. They advised the giving of a second mortgage to Burnham & Co., and they expressed their opinion of the course the mortgagor should pursue in reference to other of his creditors. One of his creditors, for a small amount, had, it seems, proposed to take judgment against the mortgagor; and October 31st, 11 days subsequent to the date of the mortgage to McGraw & Co., one

of their firm wrote to the mortgagor that he had better give them a mortgage on all his personal property, horses, wagon, and everything subject to levy, saying: "It will be the safest for you, and it will be easy for us, to turn it over to you when you get into shape." Riblet says he never answered this letter, and no such mortgage seems to have been given.

On these facts we are asked to find that the mortgage to McGraw & Co., given October 20, 1884, was given with intent to hinder and delay creditors, and is therefore void. *First*, it is urged that the mortgage is constructively fraudulent, containing a provision that is beneficial to the debtor, and necessarily prejudicial to other creditors, viz., the permission to the debtor to sell and dispose of the stock of goods in the usual course of his business, thereby shielding the property of the debtor so that creditors are delayed in the collection of their debts; and that such is the necessary effect of such a provision, whether contained in the mortgage or agreed to outside of the mortgage. This, it is claimed by the attaching creditors, is the view of the United States supreme court in *Robinson* v. *Elliott*, 22 Wall. 513, and followed in *Argall* v. *Seymour*, 4 McCrary, 56. We cannot assent to such views while administering rights under the statute of this state touching chattel mortgages, in view of the decisions of the supreme court of this state under that statute. The decisions under this statute touching chattel mortgages made in this state establish a rule of property as binding upon a court of the the United States as upon the courts of the state. The supreme court of Michigan has uniformly held that such provisions as are contained in this mortgage do not render the instrument fraudulent on its face as to other creditors. *Gay* v. *Bidwell*, 7 Mich. 519; *Wingler* v. *Sibley*, 35 Mich. 231; *Fry* v. *Russell*, Id. 229. The rule in this state is that the question of fraud is one to be determined from all the facts and circumstances bearing upon the good faith of the transaction. *Robinson* v. *Elliott* was decided under the statute of Indiana, where the point had not been passed upon by the state court, so that the supreme court of the United States say it was at liberty to consider the question for itself as to what the legislature intended. *Argall* v. *Seymour*, 4 McCrary, 56, asserts the rule laid down in *Robinson* v. *Elliott*, but the case is not disposed of under the doctrine of that case, I think. Mr. Judge LOWELL, in *Brett* v. *Carter*, 2 Low. 458, in a well-considered case, expresses different views. But, independently of these cases, we think the supreme court of the United States would promptly hold, in a case arising under a chattel mortgage executed in this state, that the rule of interpretation, as held by the supreme court of Michigan, must control as a rule of property.

The *second* view of the attaching creditor is that, taking all the facts and circumstances, including the terms of the mortgage, they are fraudulent, in fact, as intended to hinder and delay creditors. We do not agree to this view. The letter of McGraw, written 11

days after the mortgage was given, ought not to be given such effect as to relate back to October 20th, and render the transaction, to which it does not relate, fraudulent. The mortgagor agrees, or the terms of the mortgage require, the value of the stock of goods to be kept up to its value when mortgaged; hence it does not appear that the goods must necessarily be consumed by the very act of selling from the stock. We discover no arrangement between the parties to the mortgage which, from its intrinsic nature or inevitable tendency, will injuriously impair the rights of other creditors. The question is whether it was the intention in giving and receiving the mortgage to hinder and delay creditors; and I am not able to say, in view of the way chattel mortgages have been upheld and favored by the court of last resort in this state, that such was the intention.

The order will be that the attachment be dissolved, with the usual costs of the motion in favor of the defendant.