### In re PLATTS.

(District Court, D. South Dakota, S. D. August 20, 1901.)

BANKRUPTCY—CHATTEL MORTGAGE—VALIDITY AGAINST CREDITORS.

A chattel mortgage given by a merchant on his stock in trade to a bank, he retaining possession as before, and from the proceeds paying his living expenses and debts in general, no attempt being made to live up to the provision that he should make daily deposits of all sales to apply on the debt to the bank, is within Bankr. Act 1898, § 67e, providing that incumbrances of property made by one adjudged a bankrupt. within four months prior to the filing of the petition, with intent and purpose on his part to hinder, delay, or defraud his creditors, shall be void as against them.

In Bankruptcy.

George Rice, in pro. per.

Edward R. Winans, for Egan State Bank.

CARLAND, District Judge. Upon the petition of the Egan State Bank, heretofore filed in this court, an order was made requiring George Rice, trustee in bankruptcy, to show cause before this court why the claim of the Egan State Bank arising out of a certain chattel mortgage claimed by said bank to be a valid lien upon the property in the hands of the trustee belonging to the estate of Henry H. Platts, bankrupt, should not be paid in full, to the exclusion of the rights of the general creditors. Upon the return of said order said matter was referred to Hon. Henry A. Muller, referee in bankruptcy, to take testimony and make findings of fact and conclusions of law as to the validity of said lien. The stock of merchandise upon which the mortgage is claimed to have been a valid lien has heretofore, by order of the court, been sold free of incumbrances; and the present proceeding is for the purpose of determining the validity of the lien claimed by the bank upon the proceeds of the property sold, now in the hands of the trustee. As shown by the order filed herein, the referee found in favor of the bank, and the trustee is ordered to pay the amount of the lien claimed by the bank out of the proceeds now in the hands of the trustee, in preference to the claims of the general creditors. The trustee, feeling aggrieved by the decision of the referee, excepted to the findings of fact and conclusions of law made by him; and at his request the referee has certified the questions involved, together with the testimony, findings of fact, and conclusions of law, so that said order may be reviewed.

The trustee has excepted to the sixth, seventh, fifteenth, and sixteenth findings of fact made by the referee, and also to the conclusions of law made by the referee upon the facts found.

The sixth finding of fact is as follows:

"That, to secure said notes, the said Platts gave to the bank a mortgage on his entire stock of general merchandise, situated in the village of Egan, Moody county, South Dakota; that, by the terms of said mortgage, the mortgagor, Henry H. Platts, was permitted to remain in possession of and to sell the property covered by said mortgage in the usual course of trade; and that said mortgage contained a clause requiring said mortgagor to pay and deposit the proceeds of said sales in the Egan State Bank, mortgagee, to be applied in the payment of the notes, to secure which such mortgage was given."

The exception to this finding of fact must be overruled, as it is in strict accordance with the evidence.

The seventh finding of fact is as follows:

"That at the time of making the loan last above mentioned, and in consideration thereof, it was further agreed between the parties thereto that the proceeds of the sales thereof be deposited as aforesaid, to be applied in payment of the debts and expenses incurred in said business under the direction and with the consent of the said mortgagee, and to pay the mortgage debt."

Unless the finding of the referee is clearly against the weight of evidence, this court will not disturb it; and, there being evidence to sustain such a finding, the exception thereto will be overruled.

The fifteenth and sixteenth findings of fact are as follows:

"(15) That the evidence does not show that either of the above-described mortgages was given, accepted, or withheld from record with the intent to defraud any creditor of the said Platts, or with any fraudulent intent what-

soever, or that any creditor was deceived or induced to give credit by any delay in filing either of said mortgages. (16) That there is no evidence that the petitioner believed or had cause to believe at the time of the making of either of said mortgages that the said Platts was insolvent, or that he was receiving a preference, within the meaning of the national bankruptcy act of 1898."

After a careful consideration of the testimony certified, I cannot agree with the learned referee that these findings are supported by the testimony in the case. Nor can I agree with the conclusions of law found from the facts. The facts, as shown by the testimony, seem to be substantially as follows: The bankrupt, Henry H. Platts, was a merchant at the town of Egan, Moody county, this state, on the 8th day of December, 1899. On that date he borrowed from the Egan State Bank $600, giving his promissory note therefor, with interest at 10 per cent. per annum from date, due June 8, 1900. On the same date, in order to secure the payment of said note, he executed and delivered to said bank a chattel mortgage, which, so far as is material to the consideration of this case, is in the following language:

"Know all men by these presents: This mortgage, made this eighth day of December in the year A. D. 1899, by H. H. Platts of Egan, county of Moody, state of South Dakota, by occupation a merchant, mortgagor, to Egan State Bank, of Egan, county of Moody, state of South Dakota, by occupation a banking business, mortgagee, witnesseth, that the mortgagor mortgages to the mortgagee the following described personal property, now in my possession in said town and county, to wit: All of the dry goods, including boots and shoes, in his store on west one-half ½ of lot three (3), block (22), of Egan, South Dakota, amounting to about $4,000.00 (four thousand & no/100 dollars), according to the invoice price, as security for the payment to the said Egan State Bank, of Egan, S. D., of six hundred & no/100 dollars, with interest thereon at the rate of 10 per cent. per annum until fully paid, as expressed in one promissory note, of even date herewith, described as follows, to wit: One for $600.00, payable June 8th, 1900."

—That said mortgage was withheld from record until August 10, 1900, when it was duly filed. When said note was due, Platts paid the interest thereon, amounting to $30, and by an indorsement in writing on the back of the note the payment of the same was extended for six months. Platts remained in possession of his stock of merchandise, selling the same in the ordinary course of trade, and replenishing his stock from time to time as he desired. None of the proceeds were applied on this note, and no agreement, either in or outside of the mortgage, was made to that effect. The proceeds of sales made by Platts were deposited in the Egan State Bank, and were checked out by Platts in payment of claims against him, and for any purpose which he chose. This condition of affairs continued until the 2d of November, 1900. The referee did not find that the bank had any lien by virtue of this mortgage, and no such finding could be made, because the mortgage was void as to creditors, whether filed for record or not; and it can have no bearing upon the consideration of this case, except in determining what the actual state of affairs between Platts and the bank was under the mortgage which is to be hereafter mentioned. But it does not follow that, because this first mortgage was invalid, the debt thereby secured was not a valid one, and remains such notwithstanding

the invalidity of the mortgage. On the 2d day of November Platts borrowed $500 from the Egan State Bank, and gave 11 promissory notes, as follows: One for $75, due November 30, 1900; one for $75, due December 31, 1900; one for $125, due January 31, 1901; one for $75, due February 28, 1901; one for $100, due March 31, 1901; one for $100, due April 30, 1901; one for $100, due May 31, 1901; one for $100, due June 30, 1901; one for $100, due July 31, 1901; one for $100, due August 31, 1901, and one for $150, due September 30, 1901. The $600 which was due June 8, 1900, the payment of which was extended until December 8, 1900, was added to the loan of $500, to make up the amount of the notes given November 2, 1901. On November 2, 1901, Platts, in order to secure the payment of the notes just described, executed and delivered to the Egan State Bank a chattel mortgage, which, so far as is material to the consideration of this case, is as follows:

"This mortgage, made this 2nd day of November, A. D. 1900, by H. H. Platts, of the village of Egan, of Moody county, and state of South Dakota, mortgagor, to the Egan State Bank, a corporation, of the village of Egan, Moody county, and state of South Dakota, mortgagee, witnesseth, that the mortgagor mortgages to the mortgagee all that personal property described as follows, to wit: The stock of dry goods, groceries, boots and shoes, furnishing goods, Yankee notions, hats & caps, crockery, and all fixtures, scales, and sundries, contained in frame building situated on west half of lot four (4), block nineteen (19), in the village of Egan, Moody county, state of South Dakota, as will more freely appear by inventory hereto attached, marked 'Exhibit A,' and made a part of this mortgage. And it is further agreed by the mortgagor that he will make daily deposits of all sales of goods made by him to apply on the notes secured by this mortgage until all of said notes are paid. And it is further agreed by the mortgagor that this mortgage will cover all further purchases of goods made by me to replace sold stock, and this mortgage to cover all future advances made to me by the said Egan State Bank."

Upon the validity of this last-named mortgage depends the validity of the lien claimed by the bank. The mortgage given December 8, 1899, having been given more than four months prior to the filing of the petition in bankruptcy, is not affected by the bankruptcy law. It is only to be tested by the general law governing chattel mortgages, and, as I have stated, was clearly void as against creditors of Platts, under the facts shown in this case, whether it was on record or not. The mortgage given November 2, 1900, is subject to the principles of general law as well as the bankruptcy act of 1898; the involuntary petition to have Platts adjudged a bankrupt having been filed December 13, 1900. Section 67e of that act provides as follows:

"That all conveyances, transfers, assignments or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act, subsequent to the passage of this act, and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay or defraud his creditors or any of them, shall be null and void as against the creditors of such debtor."

The mortgage given November 2, 1900, was recorded November 8th of the same year. Conceding, but not deciding, that the mortgage was valid on its face, what does the testimony show as to the real condition of affairs between Platts and the bank? It clearly

appears from the testimony that no attempt was made to carry out that provision in the mortgage which is as follows:

"And it is further agreed by the mortgagor that he will make daily deposits of all sales of goods made by him, to apply on the notes secured by this mortgage, until all of said notes are paid."

Platts, according to the terms of the mortgage, was left in possession of the property, to dispose of it and add to it in the ordinary course of trade. Mr. Struble, cashier of the bank, and who acted for the bank in all matters concerning this mortgage, testified as follows:

"Q. How much do you think he [Platts] deposited in your bank from the time he executed this second mortgage up to the time that his stock was taken under bankruptcy proceedings? A. When was his store closed? Q. The 13th of December. A. I should judge that he deposited $300 or $400. Q. Did you make any claim to any part of this money which he deposited with you, excepting what was at the time due on notes? A. No; I did not. Q. Did you exercise any control over the proceeds of his sales? A. Yes, sir. Q. To what extent? A. To this extent: That what few bills were standing against him with me at that time, that they should be paid. Q. What few bills were standing against him, and were with you for collection, should be paid? A. Yes, sir; all the money that Mr. Platts deposited with me after that time I had control of, and it was used in the payment of debts. Q. Was there any agreement to that effect at the time you took the mortgage? A. Yes; there was; Q. What was that agreement? A. The agreement was that the money he got from the sale of those goods should go in to pay up this mortgage, and also pay off his indebtedness. Q. Which you held for collection? A. Not only me, but that might be held against him, whether we held it or not. Q. Did he ever render you an account of the amounts of his sales,—a statement? A. No; he did not. Q. At the time you let him have the $600, there was no such agreement made at that time, was there? A. No; there was no agreement made, other than Mr. Platts paid a few accounts at that time. They were not very heavy, but they were left there and paid into the business as he saw fit to do, but there was no particular specific agreement at all. Q. Did you ever have an accounting with Mr. Platts on this last mortgage,—what is due on it? A. A settlement, you mean? Q. An accounting of sales, and so on? A. No; nothing other than when his note came due I told him to go in and get his note, and give me a check out of the proceeds for it. Q. Did you attempt to control him [Platts] as to what claims he should pay and what he should not pay? A. Nothing, only I was looking out for my own claim. I don't know as I told him to pay the claims in the hands of attorneys, or anything of that kind, but I saw that he did. He sent drafts at different times to the attorneys, but otherwise I did not attempt to control him as to the payment of those funds. Q. As long as the funds went to the payment of his creditors, you paid no attention as to who they were, or who was paid? A. No; I did not."

On cross-examination he testified as follows:

"Q. Have you any statement showing the amount of Mr. Platts' sales after you took that mortgage? A. Nothing only my individual ledger, showing his deposits. Q. He never made any statement to you as to what his sales for any particular day or any particular time was, did he? A. No, sir; nothing only he showed me the general footing for the month before. He didn't give me any daily record or anything of the kind. Q. The 'general footings,' —what do you mean by that? A. Well, his showing; his entire cash sales and credit sales during each month. He exhibited his books showing that [cash book]. Q. He did not turn over to you the gross amount of his sales? A. No; he didn't turn over anything like that. Q. Did he make any statement of what his expenses were? A. No; he did not."

The bankrupt, Platts, went on the stand and testified as follows concerning the mortgage of November 2, 1901:

"Q. What were you to do with the money, the proceeds of sales of goods which were covered by this mortgage? A. I was to pay those notes to the bank as they became due, and I was to apply the rest in payment of debts I was owing for goods."

On cross-examination he testified as follows:

"Q. You used the goods, the proceeds of the goods, and so on, out of your business, to support your family, did you, Mr. Platts, after giving this mortgage? A. I don't understand the question. Q. After you gave this chattel mortgage you used the money out of your business, from your goods, in supporting your family, did you? A. I presume I did. I naturally would."

These quotations from the testimony that appear in the record, and which are not qualified by any other testimony found therein, show that there was no attempt by either Platts or the bank to comply with the contract in the mortgage that Platts should make daily deposits of all sales of goods made by him, to apply on the notes secured by this mortgage, until all of said notes were paid. The fact clearly appears that Platts remained in possession of the property attempted to be mortgaged, and sold and disposed of the same in the ordinary course of business, just the same after giving the mortgage as he did before; that the Egan State Bank was the bank in which he made his deposits; that when he wanted to pay any debt he drew his check upon the bank, and it was honored if he had funds. Both Mr. Struble and Mr. Platts testify that the actual understanding between the parties was that the proceeds of the sales should be deposited for the purpose of paying any creditor of Platts, including the notes held by the bank. Platts never rendered any statement of the expenses of carrying on the business, so that the bank would have any knowledge of what the actual sales amounted to, over and above expenses. He lived and supported his family out of the proceeds of the sales. After giving the second mortgage, and before the stock was seized by proceedings in bankruptcy, according to Struble's testimony, there was deposited by Platts $300 or $400. Yet, in the face of this fact, the note of $75 given by Platts, and due to the bank November 30, 1900, was not paid until December 8th; and that is the only payment upon all·this indebtedness of Platts to the bank that has ever been made, notwithstanding there was $300 or $400 deposited between November 2, 1900, and December 13, 1900, which, according to the terms of the second mortgage, were to be applied on this debt, and notwithstanding there was $2,500 deposited by Platts between December 8, 1899, and December 13, 1900. It is clearly made to appear by the testimony that the giving of the mortgage of November 2, 1900, made no difference as to the relations existing between Platts and the bank, or the conduct of the business on the part of Platts. He did not pay any more attention to paying the bank's notes than he did any other creditor. In fact, if Platts paid into the bank $300 or $400 between the date of the second mortgage and the date the goods ·were seized under bankruptcy proceedings, and this amount, except $75, went to pay creditors, then he paid more to other creditors than he did to the bank. It is not probable that Platts had any intention of defrauding his creditors by any dishonest act, but, when we are called upon to determine the intent of a debtor in this kind

of a case, the debtor must be held to have intended the natural and legal result of his act; and, if his act in giving the mortgage in question did in fact operate to hinder or delay his creditors, then he must be held to have intended this result; and that such a mortgage would have this result need not be argued. Platts agreed in the mortgage that he would make daily deposits of all sales of goods made by him, to apply on the notes secured by the mortgage, until all of said notes were paid. This agreement, being on record, is supposed to have been known by all his creditors, and they might have been content with that state of affairs; but, when we ascertain that no attempt was made to comply with that agreement, we cannot escape the conclusion that the mortgage did in effect hinder and delay the creditors of Platts, and if that was its effect, and that effect flowed naturally and legitimately from the giving of such a mortgage, and the mortgagor failing to live up to its provisions, then it must be held that Platts intended just such a result. It must not be forgotten that the words of the statute are "hinder, delay, or defraud," thus making a distinction between the intent to defraud and the intent to hinder or delay. In this connection the language of Paine, J., in Pilling v. Otis, 13 Wis. 497, is instructive:

"We think the charge is also liable to the objection that it confounds the distinction between mere intent to hinder and delay creditors and the intent to defraud them. The statute clearly recognizes this distinction. It makes void all conveyances made 'with intent to hinder, delay or defraud' creditors. This language implies that the intent to defraud is something distinct from the mere intent to 'delay.' And whoever has been familiar with trials involving the question of fraud in sales has doubtless often noticed the necessity of this distinction. It is frequently the case that debtors, with an honest intention to pay their creditors in the end, make some shift or transfer merely to gain time. And it is usual in such cases for counsel to lay great stress upon the facts indicating the intent to pay at last, as disproving fraud. It is natural for the minds of jurors as well as others to give them that effect. For the term 'fraud,' as ordinarily understood, imports something of a more vicious character than the mere production of a delay of judgment. If a court, therefore, should tell a jury that it required 'an intent to hinder, delay and defraud creditors,' in order to avoid a sale, they might very naturally find the sale good, though satisfied of the intent to delay, upon the ground that the debtor also intended to use the time gained by providing for full payment in the end. The charge in this case was given in the form stated, and for that reason we think it liable to the objection urged against it on the argument here."

The actual transaction between the bank and Platts, as shown by the testimony, constituted a legal fraud which avoided the mortgage as against the creditors of Platts.

Being of the opinion that it must be held in this case that the mortgage of November 2, 1900, is void because the natural and legal effect of the same would be to hinder and delay the creditors of Platts, it may not be necessary to discuss the further question as to whether or not, so far as the mortgage covered the past-due debt of $600, it constituted a preference under the bankruptcy act of 1898. This question cannot properly be decided on the present record, for the reason that there is no finding of the referee, nor is there sufficient evidence upon which a court could find one way or the other, as to whether Platts was insolvent on the 2d day of

November, 1900. If he was, of course, there could be no preference. If he was insolvent, and the bank had reasonable cause to believe that in giving the mortgage of November 2, 1900, so far as it covered the past-due debt of $600, Platts intended to give a preference, then as to the $600 the mortgage would be void, under section 60b; and, if the case were to turn upon this proposition alone, it would have to be remanded to the referee, with instructions to take testimony and make a finding upon the question as to the solvency of Platts on the 2d day of November, 1900. In view of the finding of the referee in this case that the bank did not have reasonable cause to believe that Platts intended to give a preference, I desire to state some principles of law which should govern the determination of such a question: Whether a person whom it is alleged has received a preference has reasonable cause to believe that it was intended thereby to give a preference or not, of course, involves the question as to whether or not the transferee had reasonable cause to believe that the person making the transfer was insolvent, but it is not essential that the creditor should have actual knowledge or belief in his debtor's insolvency, but that he should have reasonable cause to believe his debtor to be insolvent; and if facts and circumstances with respect to the debtor's financial condition are brought home to him, such as would put an ordinarily prudent man on inquiry, a creditor is chargeable with knowledge of the fact which such inquiry would reasonably be expected to disclose. It results from these views that the order sought to be reviewed should be vacated and set aside; that the findings of fact and conclusions of law made by the referee should be vacated and set aside; that an order be entered to this effect, and also declaring the mortgage in question void, and no lien upon the assets in the hands of the trustee.