## In re GEIVER.

(District Court, D. South Dakota, S. D. February 3, 1912.)

1. BANKRUPTCY (§ 279*)—ACTIONS—RIGHTS OF TRUSTEE.

   Under Bankruptcy Act July 1, 1898, c. 541, § 47, subd. "a," cl. 2, 30 Stat. 557 (U. S. Comp. St. 1901, p. 3438), as amended by Act Cong. June 25, 1910, c. 412, § 8, 36 Stat. 840, providing that a trustee shall occupy the position of a creditor having a lien by legal or equitable proceedings, the trustee was vested with all the rights, remedies, and powers of a creditor having such a lien with reference to the trustee's right to sue to set aside a chattel mortgage given by the bankrupt more than four months prior to the filing of the bankruptcy petition.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 419–424; Dec. Dig. § 279.*]

2. BANKRUPTCY (§ 184*)—LIENS—VALIDITY—WHAT LAW GOVERNS.

   The validity of a chattel mortgage given by a bankrupt on a stock of merchandise more than four months before bankruptcy intervened must be determined by the law of the state in which the mortgage was given.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*]

3. BANKRUPTCY (§ 178*).

   Where a bankrupt mortgaged a stock of merchandise to a bank to secure repayment of advances, and, notwithstanding he deposited the proceeds of sales made from the stock in the bank to an amount larger than the bank's indebtedness, he was permitted to repurchase new stock and to check out the proceeds of such sales for his own benefit, without being required to accurately account to the bank, and applied but a small part of the proceeds to the liquidation of the bank's indebted-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ness, the mortgage under the South Dakota law was invalid as to the bankrupt's creditors as a conveyance made with intent to hinder, delay, and defraud creditors, though not fraudulent in fact.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 264–274; Dec. Dig. § 178.*]

In Bankruptcy. In the matter of John Geiver, bankrupt. On certificate of the referee to review an order holding invalid certain mortgages given by the bankrupt to secure an indebtedness of the Henderson State Bank. Affirmed.

Gardner, Fairbank & Churchill, for Henderson State Bank.
Loucks & Mather and Todd & Mayo, for trustee.

ELLIOTT, District Judge. Upon the 5th day of July, 1911, John Geiver, upon his petition in voluntary bankruptcy, was duly adjudicated bankrupt. The first meeting of creditors was held on the 17th day of July, 1911, and on that date Oscar A. Halseth was duly appointed, and subsequently qualified, and ever since has been the duly qualified and acting trustee in bankruptcy of the estate of said John Geiver. That immediately after such appointment said trustee took possession of all the estate of said bankrupt, including the goods, wares, and merchandise described in the mortgage made the subject of this controversy.

Upon the petition of said trustee for an order to consolidate the stocks of merchandise at Vayland, S. D., with the stock located at Wessington, S. D., to sell the said stocks so consolidated, both of which were then in the possession and custody of the said trustee, free and clear of liens and claims, in which property the Henderson State Bank of Wessington claimed an interest by way of lien or mortgage. Said trustee further asked for an order marshaling said liens and interests determining the validity, extent, and priority. Thereupon it was ordered by this court that the said Henderson State Bank should answer and set up its claims as to said property or forever be barred from asserting the same, before Henry A. Muller, Esquire, referee of said court in bankruptcy, in the city of Sioux Falls, S. D., on the 8th day of August, 1911, at 11 o'clock a. m., and at said time and place to show cause why such orders should not be granted and such action taken, which order was dated the 31st day of July, A. D. 1911. Thereafter an answer to such order to show cause was on, to wit, the 8th day of August, A. D. 1911, duly filed in said cause, with said referee, claiming a lien upon said stocks of goods under and by virtue of the chattel mortgages hereinafter referred to. Thereafter such proceedings were had that the referee, on the 14th day of August, A. D. 1911, proceeded to the hearing of the issues involved in the claim of said Henderson State Bank; Oscar A. Halseth, trustee of said bankrupt, appearing in person and by his attorneys, Messrs. Loucks & Mather and Messrs. Todd & Mayo, and the Henderson State Bank appearing by Messrs. Gardner, Fairbanks & Churchill, its attorneys. The referee having heard the evidence adduced, and the case having been submitted on briefs, and the referee

having fully considered the same, and being advised in the matter, made the following findings of fact:

(1) That John Geiver was duly adjudicated bankrupt on the 5th day of July, 1911, upon a voluntary petition in that behalf, and on the 17th day of July, 1911, Oscar A. Halseth was duly chosen trustee, and on the 20th day of July, 1911, duly qualified, and ever since has been and now is the duly qualified and acting trustee of said estate, and ever since the said 20th day of July, 1911, the said trustee has been and now is in actual possession of all the property described in the petition of the said trustee and hereafter described in these Findings.

(2) That the Henderson State Bank is now and at all times hereinafter mentioned has been a banking corporation duly organized and existing under and by virtue of the laws of the state of South Dakota, with its principal place of business at the town of Wessington, in the county of Beadle and state of South Dakota. And the said John Geiver at the time of the adjudication in bankruptcy, and for several years prior thereto, had been a resident of said town, county, and state.

(3) That on or about the 18th day of February, A. D. 1909, the said John Geiver purchased a merchandise stock and business in the town of Wessington, S. D., and, for the purpose of paying a portion of the purchase price of said stock, borrowed from the Henderson State Bank the sum of $5,500, which said sum the said bankrupt used in the purchase of said business and stock.

That on said date the said John Geiver for value received, as aforesaid, made, executed, and delivered to said bank three promissory notes, in writing, dated on that date; one of said notes being for $500, due April 1, 1909; another of said notes was for $500, due June 1, 1909; and another of said notes, for $4,500, was payable December 18, 1909—all of said notes aggregating $5,500, and bearing interest at the rate of 8 per cent. per annum, payable annually.

That to secure the payment of said notes the said Geiver, on said date, made, executed, and delivered to said bank a certain chattel mortgage as security for the payment of said notes, which mortgage contained the following provision: "Have granted, bargained, sold and mortgaged and by these presents do hereby grant, bargain, sell and mortgage unto the said party of the second part, its successors and assigns, all that certain personal property described as follows, to wit: The entire stock of merchandise and fixtures now located in a building situated on lot seven, in block two, in the town of Wessington, Beadle county, So. Dak., 'known as the Berkner Brothers stock.' * * * But in case default shall be made in the payment of the above-mentioned sums of money, or any part thereof, or the interest thereon, or any part thereof, or in case any attempt be made to dispose of, or remove from said county of Beadle, the above-mentioned personal property, or any part thereof, or if at any time said party of the second part, its successors or assigns, shall deem said debt insecure, then in either or any of the above-mentioned cases, the whole amount of the above-mentioned sums of money and interest thereon, which shall not have been paid, shall be considered immediately due and payable, and said party of the second part, its successors or assigns, is hereby authorized, by itself or agent, to take immediate possession of said described personal property wheresoever found, possession of these presents or a true copy thereof being sufficient authority therefor, and to sell the same at public sale, or so much thereof as shall be sufficient to satisfy the amount due or to become due, as the case may be, together with all the said costs and expenses."

That said mortgage was duly witnessed by two witnesses and so executed as to entitle the same to be filed for record in the office of the register of deeds of Beadle county, and the same was so filed on the 19th day of February, 1909, at 11 o'clock a. m., and numbered 35,286 in the chattel mortgage index in the office of said register of deeds of Beadle county, S. D.

(4) That subsequent to the giving of said mortgage the said mortgagor remained in charge of said stock of merchandise so mortgaged and sold

from the same at retail in the usual course of business, and deposited all of the proceeds of the sales from said stock in the Henderson State Bank, except a few small items of expense paid out of said store in cash, and applied the proceeds from said sales to the purchase of new goods to replenish, keep up, and increase his stock, and in the payment of about $4,000 of indebtedness previously contracted by him, and in the payment of the usual and ordinary expense of conducting said business, including rent, clerk hire, taxes, insurance, repairs, and the living expenses of himself and family.

That the new goods purchased by the bankrupt, after giving the mortgage herein described, were commingled with the goods and merchandise in his place of business at the time of giving the said mortgage.

That the moneys deposited by the said bankrupt in said Henderson State Bank were used by him in the payment of the indebtedness contracted prior to the giving of said mortgage and for the payment of indebtedness contracted subsequent to the giving of said mortgage, and the entire amount of all proceeds of all sales made by the said bankrupt after the execution of said mortgage was at all times subject to his check at said bank, and no part of the said moneys derived from the sales as aforesaid was paid upon the notes described herein, except the sum of $500 paid some time in the fall of 1909, and three payments of interest, prior to February, 1911, all of which was paid out of the proceeds from the sale of goods as aforesaid.

That Bert J. Henderson, the cashier in charge of said bank, was the person who negotiated the transaction between the bank and said bankrupt, was the active manager of said bank, and at all times familiar with the business methods of said bankrupt, and from day to day visited the store of said bankrupt, frequently conferred with him about his business affairs, carefully scrutinized all checks coming into said bank drawn by said bankrupt, and at all times knew the business methods of said bankrupt; and that said bankrupt was purchasing new goods, commingling the same with the mortgaged stock, and daily selling out of said stock as aforesaid, and applying the proceeds thereof to the payment of his obligations, and in such manner as the said bankrupt desired; and that said bankrupt did not apply any of the proceeds of the sale of said merchandise to the payment of indebtedness secured by said mortgage, except as hereinbefore set forth.

That during the period of time between the 18th day of February, 1909, and the 21st day of February, 1911, the said mortgagor sold from his store in Wessington goods of the value of at least $50,000, and such sales were made out of the new goods purchased by the bankrupt to replenish the stock and out of the old goods without any attempt to distinguish between or account for the property described in the mortgage or to separate the old and the new goods.

(5) That on or about the 12th day of February, 1911, the said bankrupt, with the consent of the said bank, removed goods from the store at Wessington, in Beadle county, of the value of $1,500 to the town of Vayland, in Hand county, S. D., for the purpose of establishing another store, and added to said stock of general merchandise a new line of groceries of the value of about $500, and added the same to said stock so removed from the original stock at Wessington, and there conducted a general merchandise business, until the date of his adjudication in bankruptcy.

That on the 21st day of February, 1911, the said bankrupt was indebted to said bank in the sum of $6,030. That said indebtedness consisted of a balance due on the $5,500 loan of February 18, 1909; an overdraft and some interest accrued upon the $5,500 loan. That the whole amount of said indebtedness was then due and had grown out of the original indebtedness of February 18, 1909, and the interest thereon and overdrafts drawn on said bank drawn by said bankrupt.

That by agreement between the bankrupt and the said Henderson State Bank new notes were given representing the entire amount of said indebtedness and for the following amounts, to wit, $4,530, dated February 21, 1911, due December 1, 1911, bearing interest at the rate of 8 per cent. per

annum, and $1,500, dated February 21, 1911, due on demand, bearing interest at .8 per cent. per annum, payable annually.

That to secure the payment of the $4,530 note, the bankrupt gave to the said Henderson State Bank his certain chattel mortgage dated the 21st day of February, 1911, which mortgage was duly witnessed and executed in such manner that the same was entitled to record and was filed in the office of the register of deeds in the county of Beadle and state of South Dakota on the 24th day of February, 1911, and numbered 39,449. That said mortgage contained the following provision, to wit: "Have bargained, granted, sold and mortgaged and by these presents do hereby grant, bargain, sell and mortgage unto the said party of the second part, its successors and assigns, all that certain personal property described as follows, to wit: The entire stock of general merchandise, fixtures, etc., located in a building on lot number seven (7), block number two (2) in the town of Wessington, Beadle county, South Dakota. Said stock consists of a general line of dry goods, groceries, boots and shoes, rubber foot wear, hats and caps, gloves and mittens, men's and boys' clothing and furnishing goods, ladies' clothing and furnishing goods, fur coats, etc. The fixtures include National cash register, large office safe, counter and floor show cases, computing scales, and stoves, desks, etc."

That to secure the payment of the note for $1,500, the said bankrupt made, executed, and delivered to the said Henderson State Bank his certain chattel mortgage which was duly witnessed and executed so as to entitle the same to be filed in the office of the register of deeds of Beadle county, S. D., and the same was so filed on the 24th day of February, A. D. 1911, as No. 275 chattel mortgage index, No. 8½. That said mortgage contained the following provision, to wit: "Have bargained, granted, sold and mortgaged, and by these presents do hereby grant, bargain, sell and mortgage unto the said party of the second part, its successors and assigns, all that certain personal property described as follows, to wit: The entire stock of merchandise consisting of groceries, dry goods, boots and shoes, rubber goods, clothing, hats, caps, gloves and mittens, and in fact all goods usually kept in a general store, also all fixtures, such as scales, show cases, stove, measures, etc. All located in a building built on lots five (5) and six (6), block one (1), town of Vayland, Hand county, South Dakota."

That each of said mortgages contained the following provision, to wit: "But in case default shall be made in the payment of the above-mentioned sum of money; or any part thereof, or the interest thereon, or any part thereof, or in case any attempt be made to dispose of, or remove from said county of Hand, the above-mentioned personal property, or any part thereof, or if at any time said party of the second part, its successors or assigns, shall deem said debt insecure, then in either or any of the above-mentioned cases the whole amount of the above-mentioned sums of money and interest thereon, which shall not have been paid shall be considered immediately due and payable, and said party of the second part, its successors or assigns, is hereby authorized, by itself or agent, to take immediate possession of said described personal property wheresoever found, possession of these presents, or a true copy thereof being sufficient authority therefor, and to sell the same at public sale, or so much thereof as shall be sufficient to satisfy the amount due or to become due, as the case may be, together with all the said costs and expenses pertaining to the notifying and interviewing said party of the first part, taking, keeping, advertising and selling of said described personal property." And in each of said mortgages the mortgagor acknowledged receipt of a copy thereof.

That after the execution of the said mortgages on the 21st day of February, 1911, the mortgagor and bankrupt remained in possession of said stock of goods. The bankrupt operating the business at Wessington, and his son operating the business at Vayland, and out of the business at Wessington the bankrupt sold, in the usual course of trade, from the stock as it was then constituted, between $5,000 and $6,000 worth of merchandise, and deposited the proceeds of such sales in the Henderson State Bank, and checked out the proceeds so made, and paid the same upon obligations then due, and for running expenses, living expenses of himself and family, and

other charges incident to the business. He also replenished the stock with purchases of new goods, but the amount thereof I am unable to state. That practically all of the proceeds of the said stock of goods at Wessington were deposited in the said Henderson State Bank, and said funds were drawn out of said bank and applied to the purposes aforesaid by check on said bank, and by means of said checks the said bank was advised as to the manner in which the bankrupt was disbursing the proceeds from such sales.

That during the entire period from February 21 to May 10, 1911, the account of said bankrupt at said bank was overdrawn, and at no time after May 10, 1911, did the balance in said bank to the credit of said bankrupt exceed the sum of $390.87. That said bank knew that said bankrupt was selling goods from his stocks at Wessington and Vayland and made no objection thereto, and did not require said bankrupt to account to it for the proceeds of said sales, nor did it require an accounting at any time of the sales made by said bankrupt, nor apply any part of the proceeds of such sales to the payment of the indebtedness of said bankrupt to it.

That after the execution of the said mortgage on the Vayland stock as hereinbefore set out, said bankrupt remained in possession thereof, and, through his agent, made sales thereof at retail in the regular course of business and from the proceeds of such sales replenished the stock of goods, paid the expenses of conducting the business, consisting of rent, clerk hire, insurance, and other expenses. That practically all the proceeds of such sales at Vayland were deposited by said bankrupt in the bank at Vayland and were drawn out by him by check upon said bank; and that said Henderson State Bank knew that sales were being made by said bankrupt from said Vayland stock, and the proceeds thereof applied as hereinbefore set out and made no objection thereto, and did not require the bankrupt to account to it for the proceeds of said sales. That the amount of the sales from said stock at Vayland subsequent to February 21, 1911, was about $581.19.

(6) That said mortgages and each of them given on the 21st day of February, 1911, as hereinbefore set out, were given to secure a bona fide indebtedness then due and owing from said bankrupt to said bank, and were given for the benefit of said bank in securing to it the payment of said indebtedness. That said mortgages and each of them were given for the purpose and with the intent on the part of the bankrupt, and received by the bank with the intention on the part of both said bankrupt and said bank, to hinder, delay, and defraud the creditors of said bankrupt in the collection of their debts, and for the purpose of giving to said bank a preference over the other creditors of said bankrupt.

(7) That if the said Henderson State Bank had required the application of the proceeds of the sale of said mortgaged stocks included in the mortgage given on the 18th day of February, 1909, or the mortgages given on the 21st day of February, 1911, the said mortgages would have been fully satisfied and paid.

And from the foregoing findings of fact, the referee made the following conclusions of law:

1. That the bankrupt is justly indebted to the Henderson State Bank of Wessington in the sum of $6,030, with interest thereon at the rate of 8 per cent. from the 21st day of February 1911.

2. That the mortgage securing the note for $4,530, dated February 21, 1911, and the mortgage securing the note for $1,500, dated February 21, 1911, were given, made, and accepted for the purpose and with the intention on the part of the bankrupt and Henderson State Bank, of Wessington, S. D., to hinder, delay, and defraud the other creditors of said bankrupt; and each of said mortgages are fraudulent and void, and the lien of said mortgages ought to be vacated and set aside as to all property described therein, and to which the trustee is entitled in this matter.

And the referee thereupon entered an order considering and adjudging that the mortgage given by the bankrupt on the 21st day of

February, 1911, securing the payment of a note for $4,530 of even date therewith, due December 1, 1911, purporting to be a lien upon the entire stock of general merchandise, fixtures, etc., located in a building on lot No. 7, block No. 2, in the town of Wessington, Beadle county, S. D., and the mortgage of even date therewith securing the payment of a note of $1,500, due on demand, purporting to be a lien upon the entire stock of merchandise, consisting of groceries, boots and shoes, rubber goods, clothing, hats, caps, gloves and mittens, also all fixtures, located in the building on lots 5 and 6 in block 1, in the town of Vayland, Hand county, S. D., and each of said mortgages were wholly null and void, and the lien thereof thereby vacated and set aside, and that neither of said mortgages should constitute a lien upon any part or portion of the property described in either of said mortgages, and constituting a part of the estate now in the hands of the trustee.

It was further in like manner ordered and decreed that the claim of said Henderson State Bank should be, and the same was thereby, allowed as an unsecured claim for the full sum of $6,030, and interest thereon, from the date of the note.

Thereupon the said Henderson State Bank, by its said attorneys, filed its petition for review, in substance as follows (omitting title):

To the Honorable Henry A. Muller, referee in bankruptcy:

The Henderson State Bank, a corporation, being dissatisfied with the findings of fact, conclusions of law, and order made by said referee in the above-entitled matter on the 8th day of September, A. D. 1911, wherein said referee found that those two certain chattel mortgages, owned by said bank herein, upon two stocks of merchandise and the fixtures of said bankrupt located, respectively, at Wessington, S. D., and Vayland, S. D., were given by said bankrupt to said bank with the intent on the part of both said bankrupt and said bank to hinder, delay, and defraud the creditors of said bankrupt, and whereby it is ordered and adjudged that said mortgages and each of them are wholly null and void and the lien thereof vacated and set aside, hereby petitions the said referee to certify the said matter to the judge of said District Court for review upon both questions of law and fact.

And the said Henderson State Bank says there are manifest errors in said findings of fact and conclusions of law and order in the following particulars:

### Assignments of Error.

(1) The referee erred in making all that portion of findings of fact Nos. 3 and 4, except in so far as he found that on or about the 18th day of February, A. D. 1909, said bank loaned to said bankrupt the sum of $5,500, for the reason that all other portions of said findings are immaterial. It appearing from the evidence that the two mortgages in question were given more than four months prior to the adjudication of said John Geiver as a bankrupt, and were duly filed for record more than four months prior to said date and were given in good faith and to secure a bona fide indebtedness due from said John Geiver to said bank.

(2) The referee erred in making finding of fact No. 7, in so far as said finding purports to find certain facts with reference to a mortgage dated February 18, 1909. The same is immaterial for the reason that said mortgage was fully paid, satisfied, and discharged at the time of the execution of the two mortgages dated February 21, 1911, and the said two mortgages February 21, 1911, were given to secure valid subsisting and bona fide indebtedness due to said bank, and were given and duly filed more than four months prior to the adjudication in bankruptcy, and in so far as the said finding purports to make certain findings with reference to said mortgages

of February 21, 1911, the same is immaterial for the reason that the undisputed evidence shows that all proceeds from sales of stocks covered by said mortgages were applied in the payment of legitimate and reasonable expenses of conducting the two stores of said bankrupt at Wessington, S. D., and Vayland, S. D., respectively, in necessary and reasonable expenses of supporting the family of said bankrupt and in the purchase of new goods to replenish said stocks, and that at no time subsequent to February 21, 1911, did said bank have on hand a sufficient sum of money resulting from the proceeds of such sales to make a payment upon said mortgages.

(3) The referee erred, in finding paragraph No. 5 of his findings of fact, on page 8, that "the bankrupt operating the business at Wessington, S. D., and his son operating the business at Vayland, S. D., and out of the business at Wessington, S. D., the bankrupt sold in the usual course of trade from the stock as it was then constituted, between $5,000 and $6,000 worth of merchandise," for the reason that said finding is contrary to the evidence which shows that the amount of sales so made from said stock of merchandise at Wessington was approximately $4,000.

(4) Said referee erred in that portion of his finding of fact No. 6 which reads as follows: "That said mortgages and each of them were given for the purpose and with the intent on the part of the bankrupt, and received by the bank with the intention on the part of both said bankrupt and said bank, to hinder, delay, and defraud the creditors of said bankrupt in the collection of their debts, and for the purpose of giving to said bank a preference over the other creditors of said bankrupt"—for the reason that said portion of said finding of fact is not sustained by the evidence and is contrary to the evidence and is inconsistent with the other findings of fact of the court made herein, and that the evidence shows and the court finds that the said mortgages were given by said John Geiver to said bank to secure a bona fide indebtedness due and owing to said bankrupt to said bank, and were given for the benefit of the said bank of securing to it the payment of said indebtedness, and that the evidence shows that neither of the said mortgages were given by said bankrupt with the intent on his part to hinder, delay, or defraud his other creditors in the collection of their debts, and that neither of said mortgages were received by said bank for said purposes, and for the further reason that said mortgages did not constitute a preference in favor of said bank as against the other creditors of said bankrupt, having been given and filed more than four months prior to the adjudication in bankruptcy.

(5) The referee erred in making conclusion of law No. 2, for the reason that the same is not sustained by and is inconsistent with the findings of fact made by said referee and is not sustained by and is contrary to the evidence, in that said evidence shows, and the referee has found, that the mortgages of said bank, given on the 21st day of February, 1911, were given to secure a bona fide indebtedness then due and owing to said bank and were given for the benefit of said bank in securing to it the payment of said indebtedness, and the evidence further shows that said mortgages were given in good faith by said bankrupt and were not given for the purpose or with the intent on the part of either said bankrupt or said bank of hindering, delaying, or defrauding other creditors of said bankrupt in the collection of their debts or to cover up said property and protect said bankrupt from the claims of his other creditors, and that said mortgages and each of them are not fraudulent.

(6) Said referee erred in making and entering his order herein ordering and adjudging that said mortgages of the said bank, dated on the 21st day of February, A. D. 1911, upon the said stock of goods of said bankrupt, were wholly null and void and vacating and setting aside the lien thereof, for the reason that said order is not based upon or sustained by the findings of fact made by said referee or by the evidence herein, for the reason that it appears from said findings of fact and the evidence herein shows that said mortgages, and each of them, constitute a valid lien against said stocks of merchandise to secure to said bankrupt the payment of the sum of $6,030.

(7) The referee erred in failing to find finding of fact No. 10, proposed by

said bank to the effect that said mortgages and each of them, given on the 21st day of February, A. D. 1911, were not given for the purpose or with the intent on the part of either said bank or said bankrupt of hindering, delaying, or defrauding other creditors of said bankrupt or to cover up the property of said bankrupt from the claims of other creditors, and said mortgages and each of them are not fraudulent, for the reason that said finding is sustained and proven by the evidence.

(8) The referee erred in failing to find finding No. 11, proposed by said bank, to the effect that said bank with reasonable and proper assistance can select from the stocks of goods and fixtures and merchandise of said bankrupt at Wessington, S. D., and at Vayland, S. D., the fixtures and merchandise which constituted a part of the fixtures or stock of goods at each of said stores on the 21st day of February, A. D. 1911, and separate the same from the stocks of goods and fixtures acquired subsequent to said date for the purpose of applying stocks and fixtures on hand at said date to the liens of the two mortgages of said bank.

Wherefore, said bank prays that said referee certify the said matter to the judge of this court for a review upon all questions of law and fact herein, and your petitioner will ever pray.

Thereupon the referee prepared a statement of the case and certified the questions involved, together with the testimony, findings of fact, and conclusions of law, so that said order may be reviewed.

I have set forth the findings of the referee in full, together with the objections and exceptions of the Henderson State Bank to such findings and conclusions of law, with the thought that by viewing the findings and conclusions of the referee as a whole, and then taking the exceptions and viewing them together, the real question at issue is presented more clearly and with greater certainty and definiteness than would be possible considering the findings that are excepted to separately, with the exception thereto.

The bank has excepted to a certain portion of findings of fact numbered 3, 4, 6, 7, and 8, made by the referee.

After a careful consideration of all of the testimony, taken before the referee and certified for review, I, in all things, agree with the learned referee, and find all of these findings are supported by the testimony in the case. While it may be admitted that there is some controversy with reference to the matters at issue, I am satisfied the weight of evidence is in favor of the findings of the referee. Unless the finding of the referee is clearly against the weight of evidence, this court will not disturb it, and, there being evidence to sustain these various findings of fact, the exceptions thereto will be overruled.

Exceptions were also further taken to conclusion of law No. 2 above set forth, for the reasons named in paragraph 5 of the petition for review above set forth. An exception was also taken to the entering of the order and the judgment above set forth, as set forth in paragraph 6 of said petition for review. A further exception was taken to the failure of the referee to find proposed finding of fact No. 10, proposed by the bank, and in failing to find proposed finding No. 11, to the effect set forth in paragraph 7 and paragraph 8 of the petition for review above set forth.

These are not considered separately for the reason that in the view I take of this controversy the questions presented here for determination are:

(1) What is the position of this trustee with reference to these chattel mortgages given more than four months prior to the filing of the petition in bankruptcy?

(2) Are the mortgages of the Henderson State Bank, dated February 21, 1911, void as to the merchandise in the hands of the trustee, covered by said mortgage?

(3) Upon what law does the validity of these mortgages depend?

[1] Taking them up in order, under section 47, subd. "a," cl. 2, as amended by the act of June 25, 1910, this property, having come into the custody of the court, and being claimed by the Henderson State Bank, the trustee is vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceeding thereon.

It follows that these chattel mortgages which would have been binding upon, and could have been enforced between the mortgagor and the mortgagee, and therefore could have been enforced between the parties hereto, prior to the amendment of the bankruptcy law of A. D. 1910, no longer necessarily bind the trustee. His position is no longer the same as that of the bankrupt, but he is now in the position of a creditor holding a legal or equitable lien, and in the case at bar the chattel mortgages are to be interpreted exactly as if the trustee was a creditor holding such lien. In re Franklin Lumber Co. (D. C.) 187 Fed. 281; In re Adolph Nelson (D. C.) 191 Fed. 233, filed August 8, 1911.

[2] Answering the third question above stated, the validity of this mortgage depends upon the law of the state of South Dakota. Davis v. Crompton et al., 158 Fed. 735, 85 C. C. A. 633. See citations 6 Cent. Dig. Bankruptcy, § 275; Etheridge v. Sperry, 138 U. S. 266, 11 Sup. Ct. 563, 35 L. Ed. 171; Morse et al. v. Riblet (C. C.) 22 Fed. 501.

One of the mortgages of February 21, 1911, under consideration here, is in words and figures as follows, to wit:

### Chattel Mortgage.

Know all men by these presents:

That I, John Geiver, of section No. 6, township No. 111 N., range No. 65 W., county of Beadle, South Dakota, party of the first part, in consideration of the sum of forty-five hundred thirty & No-100 dollars, to me in hand paid by the Henderson State Bank, of Wessington, South Dakota, party of the second part, the receipt whereof is hereby confessed and acknowledged, have bargained, granted, sold and mortgaged, and by these presents do hereby grant, bargain, sell and mortgage unto the said party of the second part, its successors and assigns, all that certain personal property described as follows, to wit:

The entire stock of general merchandise, fixtures, etc., located in a building in lot number seven (7), block number two (2) in the town of Wessington, Beadle county, South Dakota.

Said stock consists of a general line of dry goods, groceries, boots and shoes, rubber footwear, hats and caps, gloves and mittens, men's and boys' clothing and furnishing goods, ladies' clothing and furnishing goods, fur coats, etc.

The fixtures include National cash register, large office safe, counter and floor show cases, computing scales, and stoves, desks, etc.

And the said party of the first part hereby represents especially for the purpose of obtaining from said party of the second part the above-mentioned sum of money that all and every part of the above-described personal

property is in his possession in town number 11 N., range number 65 W., county of Beadle, South Dakota; that he is the sole, absolute and exclusive owner of every part thereof, and that every part thereof is free of all liens and incumbrances whatsoever. Now the condition of the above obligation is such that if the said party of the first part shall well and truly pay to the said party of the second part, its successors or assigns, the said sum of money and interest when it shall become due, according to the terms of one certain promissory note executed by said party of the first part and payable to the said party of the second part, or order, viz.: One note for $4,530.00 dated February 21, 1911, payable on or before December 1, 1911. Then these presents shall be void. But in case default shall be made in the payment of the above-mentioned sum of money, or any part thereof, or the interest thereon, or any part thereof, or in case any attempt be made to dispose of, or remove from said county of Beadle the above-mentioned personal property, or any part thereof, or if at any time said party of the second part, its successors or assigns, shall deem said debt insecure, then in either or any of the above-mentioned cases the whole amount of the above-mentioned sum of money and interest thereon, which shall not have been paid shall be considered immediately due and payable, and said party of the second part, its successors or assigns, is hereby authorized by itself or agent, to take immediate possession of said described personal property wheresoever found, possession of these presents, or a true copy thereof being sufficient authority therefor, and to sell the same at public sale, or so much thereof as shall be sufficient to satisfy the amount due or to become due, as the case may be, together with all the said costs and expenses pertaining to the notifying and interviewing said party of the first part, taking, keeping, advertising and selling of said described personal property. Said party of the first part. hereby waives demand and personal notice of the time and place of sale. If from any cause said property shall fail to satisfy said debt, interest and costs, said party of the first part hereby covenants and agrees to pay the deficiency in money on the completion of the foreclosure of this mortgage.

Witness my hand this 21st day of February, 1911.

I, John Geiver, mortgagor, do hereby acknowledge that I have received a full, true and complete copy of this instrument without additional cost.

[Signed]   John Geiver.

Signed and delivered in presence of:
   Maude Anderson.
   M. W. Balfour.

The other mortgage is the same in form and only different in the amount secured thereby and in the description of the place of the location of the property. These mortgages were both filed for record in the office of the register of deeds immediately after execution.

Upon the validity of these mortgages depends the validity of the lien claimed by the bank.

The validity of these mortgages must be tested by the law of the state of South Dakota, covering chattel mortgages, and in my judgment, under the facts found by the referee herein, were clearly void as against creditors of the bankrupt.

[3] The Supreme Court of the state of South Dakota has been liberal in construing chattel mortgages on stocks of merchandise and has recognized as valid the appointment of the mortgagor as sales agent, with permission to use the proceeds in paying himself a reasonable compensation and in certain cases in buying a limited amount of new goods to keep up the stock, where the mortgage covers after-acquired stock, to preserve the security, but always requiring an accurate accounting and application of proceeds to the mortgage in-

debtedness, holding such an agreement as was sought to be proved by the Henderson State Bank in this case prima facie fraudulent.

The "understanding" (oral) claimed by the mortgagee is not sufficient to sustain the validity of this mortgage, in the light of the relation of the parties to this mortgage, the knowledge of the mortgagee of the sales of property, the knowledge of the mortgagee of the disposition of the moneys received upon such sales by the mortgagor, the same having been drawn from his bank, the fact that no accounting was ever made or demanded, leaving this record, upon the facts found, in such condition that it shows the mortgagee recognized the right of the mortgagor to appropriate the proceeds of sales without any limitation or restriction on the part of the mortgagee, with no undertaking upon the part of the mortgagor, either express or implied, that such proceeds or any part of the same should be reinvested in goods and that the mortgagee would have a mortgage upon such goods so purchased.

Upon the face of the record these mortgages constitute a plenary license to the mortgagor to possess, manage, and sell the mortgaged property, subject only to the conditions set forth in the mortgage and the implied license on the part of the mortgagee to the mortgagor to sell in the usual course of trade at retail without limitation as to quantity or terms of sale.

The decisions of the Supreme Court of South Dakota have over and over again held such mortgages presumptively fraudulent and void as to creditors. Greeley v. Winsor et al., 1 S. D. 117, 45 N. W. 325, 36 Am. St. Rep. 720; Black Hills M. Co. v. Gardiner et al., 5 S. D. 246, 58 N. W. 557; F. Meyer B. & S. Co. v. C. Shenkberg Co. et al., 11 S. D. 620, 80 N. W. 126; In re Platts (D. C.) 110 Fed. 126; Egan St. Bank v. Rice, 119 Fed. 107, 56 C. C. A. 157.

When the mortgagor, by an arrangement, express or implied, is permitted to continue in possession of, and sells, a mortgaged stock of goods, shifting in their nature, at retail, for his own benefit, the mortgage is unavailing against his creditors. The law will not aid a party to directly or indirectly continue to dispose of his property to a creditor with a secret reservation to himself, not apparent upon the paper but existing in parol. First Nat. Bank of Pierre v. Comfort. 4 Dak. 167, 28 N. W. 855, 856.

The only showing that the Henderson State Bank made justifying its claim clearly confirms the finding of the referee that no attempt was made to carry out any understanding or agreement, even admitting that there was one, that would bring the parties to this mortgage within the terms implying good faith upon their part, under the decisions of the Supreme Court of the state of South Dakota above set forth, and numerous others. There is practically no controversy in the testimony of the mortgagor and the mortgagee with reference to the possession of the mortgaged property in the mortgagor with the right to dispose of it, and yet do it in the ordinary course of trade, with knowledge on the part of the mortgagee that he deposited the proceeds in the bank and disposed of it as he liked, with no knowledge on the part of the mortgagee even as to the amount that the mort-

gagor converted for the support of his family, no pretended knowledge of what was done with any of the proceeds except the small payment that was made to the bank, while it is conceded that many times the entire mortgage indebtedness, in goods, were sold and the proceeds deposited in the bank between the date of giving the first mortgage, of which the second notes and mortgage were but a renewal, and the date of the filing of the petition in bankruptcy. It is conceded that the mortgagor never rendered any statement of expense of carrying on the business, so that the bank would know what the actual sales amounted to over and above expenses. The mortgagor paid no more attention to paying the notes of the Henderson State Bank than he did any other creditors. In fact, it is conceded, upon the face of this record, that the mortgagee knew of the deposit of large amounts of money in the bank and of the paying of other creditors by the mortgagor with the proceeds of the sales of said property, paying little, if anything, of such proceeds upon the indebtedness to the bank.

I do not hold that the facts found by the referee and as outlined above show indisputably an intention of defrauding his creditors, by any dishonest act; but, for the purposes of this case, we are to determine the intent of this mortgagor, and under the testimony of the mortgagor and the mortgagee, with the reasonable inferences to be drawn therefrom, the debtor must have intended the natural and reasonable result of his actions. That such a mortgage, manipulated, as these mortgages were, by this mortgagor and mortgagee, operated to hinder and delay the creditors of the mortgagee, need not be argued.

The statute of the state of South Dakota clearly recognizes the distinction between the mere intent to hinder and delay creditors and the intent to defraud. It makes void all conveyances made with intent to hinder, delay, or defraud creditors. This language implies that the intent to defraud is something distinct from the mere intent to delay. Pilling v. Otis, 13 Wis. 497; In re Platts, 110 Fed. 132.

The actual transaction between the bank and the mortgagor, revealed by the findings of fact and conclusions of law made by the referee herein, supported by the record, in my judgment constituted a legal fraud which made void the mortgage as against the creditors of the mortgagor, the bankrupt herein. It follows that the order sought to be reviewed should be in all things affirmed, the findings of fact and conclusions of law made by the referee should be sustained, and that an order be entered to this effect.